# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| ALEXANDRA LOZANO<br>ANGELYNE LISINSKI,<br>GIULIA FANTACCI, AND<br>LAUREN EAGAN,<br><br>    Plaintiffs,<br><br>v.<br><br>JOHN DOES I-X; JANE DOES I-X; ABC PARTNERSHIPS I-X; DEF LIMITED LIABILITY COMPANIES I-X; AND XYZ CORPORATIONS;<br><br>    Defendants. | Case No. 2:22-cv-03089<br><br>**COMPLAINT**<br><br>**JURY DEMAND ENDORSED HEREON** |

Now come plaintiffs Alexandra Lozano, Angelyne Lisinski, Giulia Fantacci, and Lauren Eagan (collectively, "Plaintiffs"), and by and through undersigned counsel, for their claims state as follows:

## PARTIES

1. Plaintiff Alexandra Lozano, ("Lozano"), is an immigration attorney who resides in the State of Washington. Lozano is the founder of AMIGA, a supportive and educational group for female immigration attorneys across the United States. Lozano founded AMIGA as a way to connect and educate immigration attorneys, as well as share her extensive knowledge of special forms of immigration relief. Lozano has mentored each of the Plaintiffs in immigration law, and in particular in the use of Violence Against Women Act Visas and Victims of Trafficking in Person Visas.

2. Plaintiff Angelyne Lisinski, ("Lisinski"), is an immigration attorney who resides in the State of Ohio.

3. Plaintiff Giulia Fantacci, ("Fantacci"), is an immigration attorney who resides in the State of Florida.

4. Plaintiff Lauren Eagan, ("Eagan"), is an immigration attorney who resides in the State of Washington.

5. JOHN and JANE DOES I-X are fictitious persons who may have an interest herein. ABC PARTNERSHIPS I-X, DEF LIMITED LIABILITY COMPANIES I-X, and XYZ CORPORATIONS I-X (collectively, "Defendants") are fictitious entities who may have an interest herein. When the true name of said fictitious persons and/or entities become known to Plaintiffs, Plaintiffs will amend their pleadings to reflect the same.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims raised in this action pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.

7. Upon information and belief, a substantial portion of Defendants' tortious actions, upon which the allegations in this Complaint are based, occurred, and caused events to occur in the Southern District of Ohio.

8. Upon information and belief, the Court has personal jurisdiction over Defendants.

9. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this judicial district.

## FACTUAL ALLEGATIONS

10. Plaintiffs are each immigration attorneys who operate their own successful law firms. Plaintiffs specialize in helping victims of human trafficking and victims of domestic

violence in obtaining visas to stay in the United States. Plaintiffs work predominantly with the Latino community. Specifically, each Plaintiff has specialized knowledge of Violence Against Women Act ("VAWA") visas and Victims of Trafficking in Person or "T" visas, which are misunderstood and underutilized. These visas can lead to work authorizations and make it possible to obtain green cards without having to leave the country to obtain legal status.

### Plaintiffs' Trademarks

11. Lozano is the founder of Alexandra Lozano Immigration Law. Lozano has continuously used Abogada Alexandra in commerce as a trademark since at least as early as 2016 in connection with Lozano's legal services ("Lozano Trademark"). Among other uses, Lozano uses Lozano Trademark A on her website, on the Alexandra Lozano Immigration Law Facebook account page, and on other social media sites like Instagram and TikTok.

12. As a result of her widespread, continuous, and exclusive use of Lozano Trademark to identify Lozano's legal services and Lozano as the source of those legal services, Lozano owns valid and subsisting common law rights in and to Lozano Trademark.

13. Lisinski is the founder of Lisinski Law. Lisinski has continuously used Lisinski Law in commerce as a trademark since at least as early as September 2020 in connection with Lisinski's legal services ("Lisinski Trademark"). Among other uses, Lisinski uses Lisinski Trademark A on her website, on the Lisinski Law Facebook account page, and on other social media sites like Instagram and TikTok.

14. As a result of her widespread, continuous, and exclusive use of Lisinski Trademark to identify Lisinski's legal services, and Lisinski as the source of those legal services, Lisinski owns valid and subsisting common law rights in and to Lisinski Trademark.

15. Fantacci is the founder of GF Immigration. Fantacci has continuously used ABOGADA JULIA in commerce as a trademark since at least as early as November 2, 2020, in connection with Fantacci's legal services (the "Fantacci Trademark").

16. As a result of her widespread, continuous, and exclusive use of Fantacci Trademark to identify Fantacci's legal services, and Fantacci as the source of those legal services, Fantacci owns valid and subsisting common law rights in and to Fantacci Trademark.

17. On September 3, 2021, GF Immigration filed an application for the Trademark with the U.S. Patent and Trademark Office, which was assigned Serial No. 97011552, and is currently pending in International Class 045 for "Legal Services."

18. Eagan is the founder of Eagan Immigration. Eagan has continuously used Eagan Immigration in commerce as a trademark since at least as early as January 1, 2016, in connection with Eagan's legal services (the "Eagan Trademark").

19. A result of her widespread, continuous, and exclusive use of Eagan Trademark to identify Eagan's legal services, and Eagan as the source of those legal services, Eagan owns valid and subsisting common law rights in and to Eagan Trademark.

20. In addition to her common law trademark, Lozano also coined the phrase, "arreglar sin salir", which translates to "fix without leaving" to raise awareness among the Spanish-speaking immigrant community of the possibilities of the VAWA and T visas.

21. Lozano has continuously used "Arreglar sin salir" in commerce as a trademark since at least as early August 2016 in connection with Lozano's legal services ("Arreglar Sin Salir Trademark").

22. On July 15, 2022, Lozano filed an application for the Arreglar Sin Salir Trademark with the U.S. Patent and Trademark Office, which was assigned Serial No.

97504788, and is currently pending in International Class 041 for "Education and Entertainment Services."

23.     Lozano has permitted each of Plaintiffs to use Arreglar Sin Salir in their marketing and educational materials, particularly on social media websites such as TikTok.

24.     Plaintiffs have expended substantial time, money, and resources marketing, advertising, and promoting their legal services which they have offered, sold, and provided under each of the Trademarks (Lozano Trademark, Lisinski Trademark, Fantacci Trademark, and Eagan Trademark, together with Arreglar Sin Salir are hereinafter referred to as "The Trademarks"), including through Plaintiffs' social media accounts and through other online and offline marketing channels.

25.     Likewise, each of Plaintiffs have expended substantial time, money, and resources marketing, advertising, and promoting her legal services and educational services which they have offered, sold, and provided under Arreglar Sin Salir Trademark.

26.     The legal services offered under each of The Trademarks are of high quality and, as a result of Plaintiffs' expenditures and efforts, the Trademark has come to signify the high quality of the legal services designated by the Trademark, and has acquired incalculable distinction, reputation, and goodwill belonging exclusively to Plaintiffs.

### Doe Defendants Conduct a Defamatory Campaign Against Plaintiffs

27.     Upon information and belief, as early as August 2020, the Plaintiffs became the target of a defamatory, discriminatory harassment campaign by the Doe Defendants.  The Doe Defendants orchestrated this campaign by targeting Plaintiffs' TikTok accounts, making false reports about the contents of Plaintiffs' TikTok postings.

28.     For example, in or about August 2020, upon information and belief, the Doe Defendants falsely reported a video posted to Eagan's TikTok account, claiming the video violated TikTok's Community Guidelines. The Doe Defendants made the report with the intent of having the video removed and Eagan's account suspended.

29.     Based on this false report, TikTok removed Eagan's video for "violating [its] Community Guidelines."

30.     Eagan filed an appeal with TikTok pursuant to the Community Guidelines, as removal of the video not only caused financial damage to Eagan, as Eagan depends on traffic from TikTok to generate leads, but the removal also caused reputational damage to Eagan. Despite Eagan's appeal, TikTok did not reinstate the video.

31.     The pattern of defamatory harassment against Eagan continued. For example, in or about December 2020, TikTok notified Eagan that her TikTok account "was temporarily blocked from posting" until December 18, 2020. In support of that suspension, TikTok claimed Eagan had committed "multiple violations" of its policies.

32.     Though Eagan successfully appealed her first temporary suspension, the harassment continued to the point that TikTok again temporarily blocked Eagan from posting, then temporarily blocked Eagan from posting as well as "commenting, messaging, and other rights." This pattern has repeated itself multiple times over.

33.     Eagan appealed each of her takedowns and bans with only approximately 50 percent of her videos being reinstated.

34. The discriminatory campaign against Eagan escalated when on or about July 29, 2021, Eagan received notice that TikTok permanently banned her account, @eaganimmigration, for no apparent reason other than the discriminatory, defamatory reports.

35. At no time did Eagan's posts in fact violate TikTok's Community Guidelines.

36. Plaintiffs Lisinski, Fantacci, and Lozano have likewise suffered from the same discriminatory defamation campaign by the Doe Defendants.

37. Upon information and belief, the Doe Defendants have targeted Lisinski's TikTok account, making discriminatory and defamatory reports regarding Lisinski's posts, resulting in TikTok taking down those posts, even though they did not violate any Community Guidelines.

38. Though Lisinski had some success appealing TikTok's takedown of Lisinski's videos, by March and April of 2021, Lisisnki rarely won any of her appeals.

39. For example, on or about the week of July 27, 2021 to August 2, 2021, two out of five of Lisinski's videos on her TikTok account were preemptively flagged by TikTok as promoting illegal goods. Subsequently, Lisinski's account was then temporarily suspended.

40. By October 2021, every video that Lisinski posted was automatically held by TikTok for review, without cause. Some of the videos were released while others were not.

41. On or about December 12, 2021, TikTok notified Lisinski that her account was permanently banned. After an appeal, Lisinski's account was reinstated. Nine days later, on or about December 21, 2021, Lisinski was again permanently banned by TikTok. She appealed and her account was restored the next day, though she was still banned from posting for seven days.

42. Lisinski was forced to create a secondary account due to TikTok's repeated improper banning of her main account due to Doe Defendants' actions.

43. Lisinski's videos are still subject to preemptive review, and upon information and belief, the Doe Defendants continue to falsely report Lisinski's content as violating TikTok's Community Guidelines. As recently as June 2022, Lisinski has had a video falsely reported and improperly removed.

44. The reports have steadily increased as now Lisinski has videos falsely flagged for violating community guidelines daily.

45. At no time have Lisinksi's posts in fact violated the Community Guidelines.

46. Likewise, upon information and belief, the Doe Defendants have targeted Fantacci's TikTok account, making discriminatory and defamatory reports regarding Fantacci's posts, resulting in TikTok removing those posts, even though they did not violate any Community Guidelines. Fantacci has also been temporarily suspended by TikTok due to these discriminatory and defamatory reports.

47. Fantacci was suspended for one week in December 2020. TikTok cited "illegal activities" as the reason for this suspension. After this happened, Fantacci struggled to post on TikTok. During 2021, most of Fantacci's videos were flagged, especially during the first half of the year.

48. As recently as October 2021, TikTok began preemptively reviewing each video Fantacci attempts to post.

49. In July 2022, Fantacci had a video removed. Then, on or about July 6, 2022, Fantacci's entire account was reported and was placed "under review" by TikTok. Fantacci had four videos and stories removed in July 2022, alone.

50. At no time have Fantacci's posts in fact violated the Community Guidelines.

51. Between 2020 and 2021, Lozano has had over 63 videos removed from TikTok.

52. TikTok has also placed multiple bans on Lozano's account during that time.

53. In 2022, Lozano's videos have been falsely reported and removed numerous times, for allegedly violating the Community Guidelines. One of these videos relayed the following simple message: "Blessings to you!" Not only that, Lozano's account has been suspended because old videos were being falsely reported.

54. In the two years since the attacks on Plaintiffs began, Lozano has never been able to consistently post on TikTok.

55. At no time have Lozano's posts in fact violated the Community Guidelines.

56. Beyond TikTok, Doe Defendants have targeted Plaintiffs' other social media accounts. For example, Lisinski's marketing content, paid advertising, and organic posts are all being reported to Facebook, even though none of the posts violate any Facebook guidelines. Her Facebook account is being spammed with false reviews. Lozano is being targeted with false reviews on Google and Glassdoor. The list goes on.

**Fraudulent Accounts**

57. Each of Plaintiffs have had imposter accounts use The Trademarks on TikTok, Instagram, and Facebook.

58. Upon information and belief, it is the Doe Defendants who have created the imposter accounts.

59. For example, there are three imposter accounts impersonating Fantacci on TikTok, using her trademarked logo: @abogadaajulia; @.abogadajulia; and, @abogadajulia.creator. Fantacci has reported those fake accounts multiple times, but TikTok has done nothing to remove them.

60. Even more, in April 2022, Fantacci discovered a Facebook account titled "Julia GF" on Facebook.

61. The fraudulent Facebook account attempted to pass itself off as Fantacci's own account by using variations of Fantacci's name as its title, using pictures Fantacci uses on her actual Facebook page, and using the Fantacci Trademark.

62. Through the fraudulent Facebook account using the Fantacci Trademark, Doe Defendants requested that potential and current clients contact them at a phone number that did not belong to Fantacci. The fraudulent Facebook account also directly contacted Fantacci's clients, asking for payments.

63. Lisinski has been targeted by the same scheme. Doe Defendants have used the Lisinski Trademark, as well as Lisinski's image, logo, branding, and marketing statements to create fraudulent Facebook accounts. Doe Defendants have used those fraudulent to message current and potential clients making defamatory statements regarding Lisinski and her legal practice. Doe Defendants have also asked Lisinski's clients for payments.

64. Lisinski has also discovered that the Lisinski Trademark, as well as Lisinksi's image, logo, branding, and marketing statements to create fraudulent TikTok accounts. These

TikTok accounts are reaching out to current and potential clients, and asking for payments as well.

65. The intent of the fraudulent accounts is to confuse current and potential clients, to divert business away from Plaintiffs, and to damage Plaintiffs' reputations through improper competitive harm.

**Unauthorized Use of The Arreglar Sin Salir Trademark**

66. An April 7, 2021 article in Mother Jones highlighted The Arreglar Sin Salir Trademark and noted that the hashtag "#arreglarsinsalir" has topped over 1 million views on TikTok.[1] However, the TikTok videos described in the Mother Jones article are nothing like the videos Plaintiffs post. The article describes the posts as following a "simple formula": a Mariachi song or reggaeton beat, a lawyer dancing and flashing work permits, often guaranteeing employment authorization in six months and a green card within two years.

67. These are unauthorized uses of the Arreglar Sin Salir Trademark.

68. Plaintiffs do not use The Arreglar Sin Salir Trademark in this manner, and in particular, do not guarantee results. However, Plaintiffs have been lumped in with these lawyers who have infringed on The Arreglar Sin Salir Trademark, and have become the target of detractors who make false statements regarding Plaintiffs' marketing and ethical conduct.

**The Doe Defendants Have Harassed Plaintiffs Through Spam Phone Calls**

69. Upon information and belief, the Doe Defendants have harassed Plaintiffs through spam phone calls.

---

[1] https://www.motherjones.com/politics/2021/04/the-tiktok-trend-that-has-immigration-lawyers-worried/

70. Lisinski and Eagan received numerous phone calls over a span of several weeks in December 2020 through January 2021.

71. Along with the phone calls, Eagan's firm received 10-20 explicit and inappropriate messages from a single phone number.

72. Upon information and belief, the same Doe Defendants who have defamed Plaintiffs on TikTok and other social media websites are also responsible for the harassing phone calls and messages.

## COUNT I
### (Defamation)

73. Plaintiffs incorporate and reallege the preceding paragraphs as if fully set forth herein.

74. Doe Defendants have made false statements about Plaintiffs in relation to their employment, quality of work, and job performance.

75. Doe Defendants have made false statements about Plaintiffs' ethics, which reflect upon Plaintiffs' character and brings each of them into ridicule, hatred, or contempt.

76. These false statements include but are not limited to: (i) reporting Plaintiffs' videos to TikTok for violating Community Guidelines, including accusing Plaintiffs of promoting illegal goods; (ii) making false reports to Facebook; (iii) posting false and defamatory reviews on Google, Facebook, and Glassdoor; and (iv) making false statements to current and prospective clients through TikTok, Facebook, and other social media messaging features.

77. These false statements were made to third parties, including, but not limited to TikTok, Facebook, Google, Glassdoor, and current and potential clients.

78. Doe Defendants made the false statements with negligence and/or actual malice.

79. The false statements were directed at Plaintiffs' occupation and profession, and therefore constitute defamation per se or caused special harm to Plaintiffs.

80. As a direct and proximate result of Doe Defendants' defamation, Plaintiffs have been damaged monetarily, emotionally, and in reputation, in an amount that exceeds $75,000.

**COUNT II**
**(Tortious Interference)**

81. Plaintiffs incorporate and reallege the preceding paragraphs as if fully set forth herein.

82. Plaintiffs have existing business relationships with individuals, entities, and organizations relating to their businesses.

83. Plaintiffs have a reasonable expectation of future business relationships with individuals, entities, and organizations with whom Plaintiffs do business or whom Plaintiffs may reasonably expect to do business.

84. At all material times hereto, Doe Defendants were aware of Plaintiffs' existing and/or prospective business relationships.

85. Upon information and belief, Doe Defendants intentionally and/or purposefully interfered with Plaintiffs' existing and prospective relationships by making false and defamatory reports, including but not limited to : (i) reporting Plaintiffs' videos to TikTok for violating Community Guidelines, including accusing Plaintiffs of promoting illegal goods; (ii) making false reports to Facebook; (iii) posting false and defamatory reviews on Google, Facebook, and Glassdoor; and (iv) making false statements to current and prospective clients through TikTok,

Facebook, and other social media messaging features. These reports were made with the goal of interfering with Plaintiffs' business relationships.

86. In interfering with Plaintiffs' existing and prospective relationships, Doe Defendants acted with malice.

87. Doe Defendants lacked any justification or privilege to make such reports and interference.

88. As a direct and proximate result of Doe Defendants' tortious interference, Plaintiffs have been damaged monetarily, emotionally, and in reputation, in an amount that exceeds $75,000.

## COUNT III
### (Invasion of Privacy – False Light)

89. Plaintiffs incorporate and reallege the preceding paragraphs as if fully set forth herein.

90. Doe Defendants have made false reports regarding Plaintiffs, including but not limited to: (i) reporting Plaintiffs' videos to TikTok for violating Community Guidelines, including accusing Plaintiffs of promoting illegal goods; (ii) making false reports to Facebook; (iii) posting false and defamatory reviews on Google, Facebook, and Glassdoor; and (iv) making false statements to current and prospective clients through TikTok, Facebook, and other social media messaging features Doe Defendants have made these false reports to third parties, including but not limited to TikTok.

91. The false reports have placed Plaintiffs in a false light.

92. The false reports are highly offensive to a reasonable person and have been shared with the intent of causing harm.

93. Doe Defendants knew the false reports were false or acted in reckless disregard as to the falsity of the false reports.

94. Doe Defendants acted with malice in making the false reports.

95. As a direct and proximate result of Doe Defendants' tortious actions, Plaintiffs have been damaged monetarily, emotionally, and in reputation, in an amount that exceeds $75,000.

## COUNT IV
### (Intentional Infliction of Emotional Distress)

96. Plaintiffs incorporate and reallege the preceding paragraphs as if fully set forth herein.

97. By sharing the false reports, convincing TikTok to remove Plaintiffs' posts and videos resulting in the suspension of Plaintiffs' accounts, harming Plaintiffs' businesses, and harassing the Plaintiffs through the reports to TikTok, as well as phone calls and other means, and by creating fraudulent imposter accounts, Doe Defendants have engaged in extreme and outrageous conduct.

98. Doe Defendants engaged in extreme and outrageous conduct with the intention to cause Plaintiffs severe emotional distress.

99. Doe Defendants knew and/or recklessly disregarded the near certainty that such emotional distress would result from their conduct.

100. Doe Defendants acted with malice when making false reports, including those to TikTok, and in harassing the Plaintiffs.

101. As a direct and proximate result of Doe Defendants' tortious actions, Plaintiffs have been damaged monetarily, emotionally, and in reputation, in an amount that exceeds $75,000.

## COUNT V
### (Federal Unfair Competition – 15 U.S.C. § 1125(a)(1)(A))

102. Plaintiffs incorporate and reallege the preceding paragraphs as if fully set forth herein.

103. Doe Defendants' unauthorized use in commerce of The Trademarks, through unauthorized use of The Trademarks as well as the fraudulent Facebook and TikTok Accounts, has already deceived and is likely to deceive consumers of legal services as to the origin, source, sponsorship, or affiliation of Doe Defendants' fraudulent services (through impersonation of Plaintiffs) and is likely to cause consumers to believe, contrary to fact, that Doe Defendants' fraudulent services are sold, authorized, endorsed, or sponsored by Plaintiffs, or that Doe Defendants are in some way affiliated with or sponsored by Plaintiffs, or that Doe Defendants actually are Plaintiffs.

104. Doe Defendants' unauthorized use in commerce of The Trademarks as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

105. Upon information and belief, Defendants committed the conduct alleged herein with full knowledge of Plaintiffs' prior rights in The Trademarks and with the willful intent to cause confusion, mistake, or deception and trade on Plaintiffs' reputation and goodwill.

106. Upon information and belief, Doe Defendants' conduct as alleged herein is willful and is intended to cause, has caused, and is likely to continue to cause confusion, mistake, or deception as to the affiliation, connection, or association of Doe Defendants with Plaintiffs.

107. Doe Defendants' conduct as alleged herein, constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

108. Doe Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiffs, and to their goodwill and reputation, and will continue to both damage Plaintiffs and confuse the public unless enjoined by this Court. Plaintiffs have no adequate remedy at law.

109. Plaintiffs are entitled to, among other relief, injunctive relief and an award of actual damages, Doe Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT VI
### (Civil Conspiracy)

110. Plaintiffs incorporate and reallege the preceding paragraphs as if fully set forth herein.

111. Doe Defendants participated in a malicious combination with the purpose of causing damage to Plaintiffs' businesses and reputations.

112. Doe Defendants, each and collectively, engaged in unlawful activity including defamation, tortious interference, invasion of privacy, intentional infliction of emotional distress, and unfair competition independently and in conspiracy with each other.

113. As a direct and proximate result of Doe Defendants' tortious actions, Plaintiffs have been damaged monetarily, emotionally, and in reputation, in an amount that exceeds $75,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this court enter judgment in their favor and issue the following relief as applicable:

1. Preliminary and permanent injunctive relief as against Doe Defendants from defaming and harassing Plaintiffs;

2. An award of general, specific, compensatory, punitive, special, and exemplary damages in an amount exceeding $75,000;

3. Pre- and post-judgment interest;

4. An award of Plaintiffs' reasonable attorneys' fees, costs, and expenses incurred; and,

5. Such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs respectfully request a trial by jury on all claim so triable.

Date: August 10, 2022                    Respectfully submitted,

 /s/ Shawn J. Organ
Shawn J. Organ (0042052)
  *Trial Attorney*
Kirsten R. Fraser (0093951)
Ashley T. Merino (0096853)
**Organ Law LLP**
1330 Dublin Road
Columbus, Ohio 43215
614.481.0900

614.481.0904 (f)
sjorgan@organlegal.com
kfraser@organlegal.com
amerino@organlegal.com

*Attorneys for Plaintiffs*