**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO**

LOZANO ET AL.,

      Plaintiffs,

v.

JOHN DOES I-X; JANE DOES I-X; ABC
PARTNERSHIPS I-X; DEF LIMITED LIABILITY
COMPANIES I-X; AND XYZ CORPORATIONS;

      Defendants.

Case No. 2:22-cv-03089

**PLAINTIFFS' EXHIBIT D**

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON – SEATTLE DIVISION

| | |
|---|---|
| LOZANO, et al., | ) |
| | ) |
|      Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| DOE, et al., | ) |
| | ) |
|      Defendants | ) |

## MOTION OF STEFANIA JOANNE RAMOS BIRCH ESQ.
## TO QUASH THIRD-PARTY SUBPOENA AND FOR A PROTECTIVE ORDER

Pursuant to Federal Rule of Civil Procedure 45(d)(3), non-party, Stefania J. Ramos Birch, Esq. ("Mrs. Ramos"), hereby moves to quash the subpoena Plaintiffs Alexandra Lozano ("Plaintiff Lozano"), Angelyne Lisinski ("Plaintiff Lisinski"), and Giulia Fantacci ("Plaintiff Fantacci") served upon her on September 16, 2022 which seeks her deposition and the production of documents in *Lozano, et al., v. Doe, et al.*, 2:22-cv-03089-ALM-KAJ, pending in the United States District Court for the Southern District of Ohio (Columbus) as the Ohio forum lacks personal jurisdiction over her; or, in the alternative, because the subpoena is overly broad, unduly burdensome, lacks proportionality, seeks information not relevant to the claims in the Plaintiffs' Complaint, and non-party document discovery is not permitted by the order granting expedited discovery issued by the United States District Court for the Southern District of Ohio. Alternatively, Mrs. Ramos requests that this Court issue a protective order pursuant to the Fed. R. Civ. P. 26(c)(1) limiting the deposition and document discovery to the issue of personal jurisdiction, *i.e.*, her contacts with Ohio and Plaintiff Lisinski, the sole Ohio Plaintiff, and excluding from discovery the catchphrase "arreglar sin salir". Mrs. Ramos further requests a protective order to limit discovery to a deposition only to determine the extent of her knowledge regarding the defamatory campaign alleged in the Complaint and to her knowledge of the

1

defamers' identities. She also requests a protective order to stay discovery pending the outcome of this motion to quash pursuant to Fed. R. Civ. P. 26(c)(1). If so ordered to comply with the subpoena, Mrs. Ramos requests a 90-day extension due to her advanced pregnancy, imminent due date, and pre-planned maternity leave.

A copy of the subpoena served upon Mrs. Ramos is attached as Exhibit A; Mrs. Ramos' declaration is attached as Exhibit B; the Plaintiffs' Motion for Leave to Serve Third Party Subpoenas Prior to a Rule 26(f) Conference is attached as Exhibit C; the order granting leave to serve third party subpoenas is attached as Exhibit D; a copy of the initial Complaint is attached as Exhibit E; and a copy of the letter entitled "*Immediate Action Required – Removal of Defamatory Posts on Facebook*" dated March 11, 2021 is attached as Exhibit F. Mrs. Ramos respectfully requests the Court's speedy determination of this matter to provide clarity for all concerned regarding whether the subpoena is invalid and/or should be quashed.

## MEMORANDUM IN SUPPORT

## I.    BACKGROUND AND INTRODUCTION

Mrs. Ramos is an immigration attorney who has at all relevant times resided in Washington State and has been licensed in the States of Washington and California. She owns and operates a solo immigration law practice in Lynnwood, Washington where she primarily works with the immigrant community offering legal services in the areas of deportation defense, family-based petitions, asylum, citizenship, residency, and humanitarian benefits such as protection under the Violence Against Women Act ("VAWA"), U-Nonimmigrant Status, and T-Nonimmigrant Status.

As detailed in the attached declaration, Mrs. Ramos and Plaintiff Lozano have law offices in the same general area and have shared mutual clients in common. In approximately February of 2021, Mrs. Ramos posted a comment on a thread in a private, attorney-only Facebook group to

voice her concerns regarding ethical issues related to Plaintiff Lozano's practice of immigration law in the State of Washington. Previously, a client consulted with Mrs. Ramos for a second opinion after first consulting with Plaintiff Lozano, and indicated that Plaintiff Lozano encouraged him/her to retain her for legal services in the amount of $12,000 to apply for an immigration benefit under VAWA. In order to qualify under VAWA, there must be a finding of battery or extreme cruelty by a U.S. citizen or lawful permanent resident family member. When the client consulted with Mrs. Ramos, s/he unequivocally indicated that s/he was not subjected to battery or extreme cruelty by their U.S. citizen or lawful permanent resident family member and yet she was encouraged by Plaintiff Lozano to mislead the government in an application for VAWA benefits. Thus, Mrs. Ramos determined that her client was ineligible for VAWA as previously claimed by Plaintiff Lozano and that Plaintiff Lozano was encouraging him/her to mislead the government for financial benefit ($12,000). Her comment on the Facebook thread indicated her concerns to a private group of immigration law practitioners.

On the aforementioned Facebook thread, numerous other immigration attorneys posted similar client experiences with Plaintiff Lozano and expressed serious concerns over her business practices as well as deceptive tactics to retain clients. For context, most non-immigrants who enter the U.S. without inspection must leave the U.S. in order to regularize their immigration status, save for a limited number of exceptions. However, Plaintiff Lozano uses the tagline "arreglar sin salir" (that she has since trademarked) meaning "fix without leaving" heavily in her social media marketing, as though she can help most people to regularize their status without having to follow the normal process of leaving the U.S. She relies on a narrow exception to the general rule based on VAWA (which requires a finding of battery or extreme cruelty by a U.S. citizen or lawful permanent resident family member). Plaintiff Lozano's business practices and social media

marketing has been highly controversial within the immigration legal community and resulted in immigration practitioners discussing her practices on the aforementioned Facebook thread.

On March 11, 2021, Plaintiff Lozano, through counsel unauthorized to practice law in the State of Washington, sent a letter to Mrs. Ramos via email entitled "*Immediate Action Required – Removal of Defamatory Posts on Facebook*" (essentially a cease-and-desist demand), demanding the removal of the allegedly "defamatory" comment Mrs. Ramos left on the Facebook thread within 5 calendar days or threatened the initiation of litigation against her. Counsel for Plaintiff Lozano sent similar cease-and-desist emails to approximately 25-30[1] attorneys located all over the United States on or around the same timeframe. Thereafter, the Facebook administrator of the private group almost immediately removed the thread in its entirety, and Plaintiff Lozano initiated no legal proceedings against Mrs. Ramos. The matter appeared to be resolved.

On August 10, 2022, Plaintiffs filed a Complaint against numerous unidentified Defendants in the Southern District of Ohio (Columbus), where only Plaintiff Lisinski resides and is licensed to practice law. (As the Defendants are unidentified, the residency of the Defendants is presently unknown). Concurrently with the filing of the Complaint, Plaintiffs filed a Motion for Leave to Serve Third Party Subpoenas Prior to a Rule 26(f) Conference, which was granted by the court on August 12, 2022.

On September 16, 2022, Mrs. Ramos, a non-party to this litigation, was served with a subpoena to appear for deposition and to produce documents regarding her text messages, e-mails, and social media for the Plaintiffs' names, any variations thereof, their law firm names, and the

---

[1] This is Mrs. Ramos' best approximate guess as to how many cease-and-desist letters were sent to immigration attorneys across the U.S.

phrase "arreglar sin salir"[2] from June 2020 to present. The subpoena requests document discovery *and* deposition testimony on October 7, 2022 at 10:00 am at Plaintiff Lozano's office in Tukwila, Washington.

On September 16, 2022, Mrs. Ramos informed Plaintiffs' counsel of her advanced pregnancy and imminent delivery date. Plaintiffs' counsel verbally offered a discovery extension until November or December, which was appreciated. On September 21, 2022, Plaintiffs' counsel then requested via email document discovery by October 14, 2022 and a Zoom deposition during the third or fourth week of September. On September 23, 2022, Mrs. Ramos responded via email with correspondence from her medical provider indicating that her due date is October 17, 2022, she is having pregnancy-related medical complications, and therefore cannot be expected to be in court or sit for a deposition at any point after October 1, 2022. She indicated that her earliest availability would be December. On September 27, 2022, Plaintiffs' counsel requested document production and deposition on December 12.

In response to the non-party subpoena, Mrs. Ramos has filed the instant Motion to Quash.

## II.    TIMELINESS

"[T]he nonparty served with the subpoena duces tecum may make objections . . . within 14 days after service or before the time for compliance, if less than 14 days." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005).

Mrs. Ramos was served the subpoena at issue on September 16, 2022 and timely filed the instant Motion to Quash within the required 14-day period. Thus, the instant motion is timely filed.

## III.    VENUE

---

[2] In addition, we note that both the Plaintiffs' motion seeking authorization to serve discovery upon third parties and the order of the Magistrate Judge granting that motion relied exclusively on case law supporting the issuance of subpoenas to non-party internet service or platform providers as opposed to individual users.

Fed. R. Civ. P. 45 states that "the court for the district where compliance is required" has primary authority over all subpoena-related motions. Because Mrs. Ramos is located in Lynnwood, Washington, and compliance with the subpoena is required in Tukwila, Washington (at Plaintiff Lozano's office), this Court is the proper venue for the instant motion.

## IV.     SUMMARY OF RELEVANT LAW

### A.     Personal Jurisdiction

Since *International Shoe Co. v. Washington*, the hallmark principle of due process has been that a court may exercise jurisdiction over a person or organization only after it has been established that the person or entity possess "minimum contacts" within the forum "such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. 310, 316, 66 S.Ct. 154, 90 L. Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)).

A district court must have personal jurisdiction over a nonparty in order to compel it to comply with a valid discovery request under Fed. R. Civ. P. 45. *See, e.g.*, *Gucci Am. v. Bank of China*, 768 F.3d 122, 141 & n.20 (2d Cir. 2014); *In re Application to Enforce Admin. Subpoenas Duces Tecum of the S.E.C. v. Knowles*, 87 F.3d 413, 418 (10th Cir. 1996) (requiring that a Bahamian nonparty have minimum contacts with the United States before holding it subject to an administrative agency subpoena); *Ariel v. Jones,* 693 F.2d 1058, 1061 (11th Cir. 1982) (upholding the quashing of a subpoena "[i]n view of the minimal contacts of the [nonparty] with [the forum]"); *Elder–Beerman Stores Corp. v. Federated Dep't Stores, Inc.,* 45 F.R.D. 515, 516 (S.D.N.Y. 1968) (quashing a document subpoena based on complete lack of contacts with the forum); *see also* 16 Moore et al., *Moore's Federal Practice* § 108.125, at 108–48 (3d ed. 2008) ("A nonparty witness cannot be compelled to testify at a trial, hearing, or deposition unless the witness is subject

to the personal jurisdiction of the court."); Gary B. Born, *International Civil Litigation in United States Courts* 865 (3d ed. 1996) ("[A] non-party witness can only be compelled to produce documents if it is subject to the court's personal jurisdiction."). Specific or "case-linked" jurisdiction "depends on an affiliation between the forum and the underlying controversy (*i.e.*, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation)." *Walden v. Fiore*, 571 U.S. 277, 134 S. Ct. 1115, 1121 n.6, 188 L. Ed. 2d 12 (2014) (internal quotation omitted); *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017).

Rule 4 of the Fed. R. Civ. P. directs federal courts to follow the pertinent personal jurisdiction laws of the state courts where the federal courts are located. Here, the pertinent personal jurisdiction law to the underlying action would be Ohio Revised Code Section 2307.382. The Ohio State long-arm statute is pertinent, here, because Mrs. Ramos is a foreign nonparty to this action. Ohio Revised Code Section 2307.382 states:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to cause an action arising from a person's:

(1) Transacting any business in this state;
(2) Contracting to supply services or goods in this state;
(3) Causing tortious injury by and act or omission in this state;
(4) Causing tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when the person might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that the person also regularly does or solicits business, or engages in any other persistent source of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
(6) Causing tortious injury in this state to any person by any act outside this state committed with the purpose of injuring persons, when the person might reasonably have expected that some person would be injured thereby in this state;
(7) Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which the person commits or in the commission of which the person is guilty of complicity;

      (8) Having an interest in, using, or possessing real property in this state; and

      (9) Contracting to insure any person, property, or risk located within this state at the time of contracting.

      (B) For purposes of this section, a person who enters into an agreement, as a principal, with a sales representative for the solicitation of orders in this state is transacting business in this state. As used in this division, "principal" and "sales representative" have the same meanings as in section 1335.11 of the Revised Code.

      (C) In addition to a court's exercise of personal jurisdiction under division (A) of this section, a court may exercise personal jurisdiction over a person on any basis consistent with the Ohio Constitution and the United States Constitution.

To determine whether Due Process rights would be violated by the exercise of personal jurisdiction over a nonparty by the United States District Court for the Southern District of Ohio, the Sixth Circuit evaluates three factors: (1) whether the [nonparty] has purposefully availed themselves of the privilege of acting or causing a consequence in the forum state; (2) whether the cause of action arises from the [nonparty's] activities in the forum state; and (3) whether those acts, or consequences caused by those acts, have a substantial enough connection to the forum state to make it reasonable to exercise personal jurisdiction over [the nonparty]. *Southern Machin Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). If just one of these criteria is missing, it is sufficient to prevent the exercise of personal jurisdiction. *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293 (6th Cir. 1989).

## B.    The Scope of Discovery

Fed. R. Civ. P. 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery

outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). While information need not be admissible to be discoverable, it must be proportional and relevant to any claim or defense. *Id.*

The Court is vested with broad discretion to manage discovery. *Dichter-Mad Family Partners, LLP v. U.S.*, 709 F.3d 749, 751 (9th Cir. 2013) (per curiam); *Hunt v. Cnty. of Orange*, 672 F.3d 606, 616 (9th Cir. 2012); *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005); *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). Under Rule 26(c)(1), a party from whom discovery is sought may move for a protective order. Fed. R. Civ. P. 26(c)(1). For good cause shown, courts may issue a protective order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. *See Id.* "[B]road discretion is vested in the trial court to permit or deny discovery." *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002); *see also Crawford-El v. Britton*, 523 U.S. 574, 598, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998). A protective order may forbid discovery or specify terms for discovery. Fed. R. Civ. P. 26(c)(1)(A),(B). The 2015 amendments to the discovery rules are meant to curb the culture of scorched earth litigation tactics by emphasizing the importance of ensuring that the discovery process "provide[s] parties with efficient access to what is needed to prove a claim or defense, but eliminate unnecessary or wasteful discovery." *Roberts v. Clark County School Dist.*, 312 F.R.D. 594, 603-04 (D. Nev. 2016).

Rule 26's requirement of "good cause" to support a protective order places the burden upon the movant to show the necessity of its issuance; the Court looks to whether the movant has set forth particular and specific demonstrations of fact, as distinguished from stereotyped and conclusory statements. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16, 101 S. Ct. 2193, 68 L. Ed. 2d 693 (1981).

Most significantly, Rule 26(b)(1) provides, in pertinent part, that discovery must be "proportional to the needs of the case[.]" A party seeking discovery must comply with Rule 26(b)(1)'s proportionality limits on discovery requests and is subject to Rule 26(g)(1)(B)'s requirement to certify that the discovery request is "(i) consistent with these rules . . . ; (ii) not interposed for any improper purpose, such as to harass…; and (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action." Fed. R. Civ. P. 26(g)(1)(B). "Rule 26(b) has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition." *United States ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225, 237 (S.D. Cal. 2015) (citation omitted). While relevancy in the discovery context is broader than in the trial context, district courts need not condone the use of discovery to engage in fishing expeditions. *See, e.g., Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004).

If a party resists discovery on the grounds of proportionality, it bears the burden of making a specific objection and showing that the discovery fails Rule 26(b)'s proportionality calculation by coming forward with specific information to address the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). Once the resisting party makes such a showing, then the requesting party is required to make its own showing in regard to relevance or proportionality. *Carr v. State Farm Mut. Auto. Insurance Co.*, 312 F.R.D. 459, 468-69 (N.D.Tex. 2015). "Once the person subpoenaed objects to the subpoena . . . the party seeking discovery must obtain a court order directing compliance." *Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, 494 n. 5 (9th Cir.1983).

While the discovery rules are accorded broad and liberal treatment, discovery does have "'ultimate and necessary boundaries.'" *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (*quoting Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Rule 26(b)(2)(C) mandates that the Court limit the frequency or extent of discovery otherwise allowed, if it determines: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Federal Rules of Civil Procedure 26 and 45 govern discovery from non-parties. Discovery may also be obtained from non-parties pursuant to a subpoena issued and served pursuant to Federal Rule of Civil Procedure 45. Fed. R. Civ. P. 45(b)(1). The Rule 26 relevancy standard also applies to subpoenas to non-parties. *Beinin v. Ctr. for Study of Popular Culture*, No. 06-cv-02298 JW (RS), 2007 U.S. Dist. LEXIS 22518, 2007 WL 832962, at *2 (N.D. Cal. Mar. 16, 2007). Rule 45, in turn, provides that a party may command a non-party to testify at a deposition and "produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control." Fed. R. Civ. P. 45(a)(1)(A)(iii).

Both Rules 45 and 26 authorize the Court to modify a subpoena duces tecum when its scope exceeds the boundaries of permissible discovery or otherwise violates the parameters of Rule 45. Where discovery is requested from non-parties, more stringent restrictions should be enforced. The Ninth Circuit has a long-standing policy of affording extra protection to non-parties subject to discovery requests. *See High Tech Med. Instr., Inc. v. New Image Ind., Inc.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995) (awarding sanctions against party who failed to avoid burden to non-party); *see, e.g.*, *Century Sur. Co. v. Master Design Drywall, Inc.*, No. 09cv280-LAB-AJB, 2010

U.S. Dist. LEXIS 53831, 2010 WL 2231890, at *1 (S.D. Cal. June 2, 2010) ("Underlying the protections of Rule 45 is the recognition that the word 'non-party' serves as a constant reminder of the reasons for the limitations that characterize 'third-party' discovery.") (citations and quotations omitted); *Kim v. NuVasive, Inc., No*. 11cv1370-DMS-NLS, 2011 U.S. Dist. LEXIS 96878, 2011 WL 3844106, *2 (S.D. Cal. Aug. 29, 2011) ("Non-parties deserve extra protection from the courts"). Thus, the subpoena should be tailored to request only information reasonably necessary to address specific issues in the case. *See Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 813 (9th Cir. 2003).

Rule 45 provides additional protections to non-parties; specifically, the party issuing a subpoena to a non-party "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). In that regard, a subpoena must give a prospective deponent reasonable notice, and the court must quash or modify a subpoena when it "fails to allow a reasonable time to comply." Fed. R. Civ. P. 45(d)(3); *see Nalco Co. v. Turner Designs, Inc.*, No. 13-cv-02727 NC, 2014 U.S. Dist. LEXIS 45669, 2014 WL 1311571, at *1 (N.D. Cal. Mar. 31, 2014) (denying motion to compel because subpoenaing party failed to take reasonable steps to avoid imposing undue burden). In turn, the Court "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii).

The party who moves to quash a subpoena has the "burden of persuasion" under Rule 45(d)(3) to demonstrate that compliance would impose undue burden or expense. To determine whether the subpoena presents an undue burden, the Ninth Circuit considers the following factors: (1) the burden imposed on the party subject to the subpoena by the discovery request; (2) the relevance of the information sought to the claims or defenses at issue; (3) the breadth of the

discovery request; and (4) the litigant's need for the information. *Malibu Media, LLC v. Doe*, No. 16cv444-GPC-BGS, 2016 U.S. Dist. LEXIS 168657, 2016 WL 7098807, at *1 (S.D. Cal. Dec. 6, 2016) (quoting *Liberty Media Holdings, LLC v. Does*, No. 11cv575-MMA-NLS, 2012 U.S. Dist. LEXIS 24232, 2012 WL 628309, at *2 (S.D. Cal. Feb. 24, 2012). Whether a burdensome subpoena is reasonable "must be determined according to the facts of the case," such as the party's need for the documents and the nature and importance of the litigation." *Linder v. Dep't of Def.*, 133 F.3d 17, 24, 328 U.S. App. D.C. 154 (D.C.C. 1998). (citation and internal quotation marks omitted). The "undue burden" test also requires the Court to be "generally sensitive to the costs imposed on third-parties." *In re Micron Tech., Inc. Sec. Litig.*, 264 F.R.D. 7, 9 (D.D.C. 2010) (citation and internal quotation marks omitted).

## V.    ARGUMENT

### A.    The Southern District of Ohio Lacks Personal Jurisdiction Over Mrs. Ramos.

As discussed above, the Southern District of Ohio may not exercise personal jurisdiction over a nonparty, such as Mrs. Ramos, unless: (1) the nonparty falls within the scope of the long-arm statute of Ohio, and (2) the court's exercise of personal jurisdiction would not violate the Due Process Clause of the United States Constitution.

Here, an exercise of personal jurisdiction over Mrs. Ramos would fail both the Ohio long-arm statute and the Sixth Circuit's three-factor test to determine whether her Due Process rights would be violated as a non-party. The Ohio long-arm statute requires that the cause of action "arise" from a person's contacts with the State of Ohio. Plaintiffs do not claim that any of their alleged causes of action arise from Mrs. Ramos' contacts; indeed, she is not a defendant. Mrs. Ramos has sworn in her declaration that she has at all relevant times resided in Washington State, has been licensed in the States of Washington and California, and that she has no contact with

Ohio or with Plaintiff Lisinski (the sole Ohio Plaintiff) relevant to this case. Thus, the Ohio long-arm statute does not provide a basis for the exercise of personal jurisdiction over her in this matter.

In addition, Mrs. Ramos' contacts with the State of Ohio fail the Sixth Circuit test, as she has not acted or caused any consequence in Ohio, the cause of action does not arise from her activities in Ohio, and her contact with Ohio is not a substantial enough connection to Ohio to make it reasonable for the Southern District of Ohio to exercise personal jurisdiction over her for purposes of the issuance of the subpoena.

In conclusion, neither of the two legal bases used to authorize federal courts in Ohio to exercise jurisdiction over subpoenaed nonparties in Washington are sufficiently satisfied to justify the subpoena ordered on Mrs. Ramos. As a result, this Court should quash the Plaintiffs' subpoena for lack of personal jurisdiction; or, alternatively, issue a protective order limiting deposition and document discovery to the issue of personal jurisdiction, *i.e.*, Mrs. Ramos' contacts with Ohio and Plaintiff Lisinski, the sole Ohio Plaintiff, and excluding from discovery the catchphrase "arreglar sin salir".

### B. The Subpoena Should Be Quashed as it is Overly Broad, Lacks Proportionality, is Unduly Burdensome, Seeks Information Not Relevant to the Claims in the Plaintiffs' Complaint, and Document Discovery is Not Permitted by Court Order.

Rule 26(f) dictates that a party generally may not seek discovery "before the parties have conferred as required by Rule 26(f)," except in limited circumstances, including when authorized by court order for good cause. Red. R. Civ. P. 26(d). Plaintiffs' motion for leave to serve third party subpoenas prior to a Rule 26(f) Conference was granted by the United States District Court for the Southern District of Ohio, which relied on caselaw that **<u>exclusively</u>** supports the issuance of subpoenas to third-party platforms and internet service providers. The court found that there was "good cause" for expedited discovery as: Plaintiffs asserted an unfair competition claim

against Defendants for misappropriation of their trademarks; "only the internet platforms on which the alleged conduct occurred can identify Defendants"; and that the scope of the requested discovery is sufficiently narrow as Plaintiffs' request from the internet platforms only the identifying information of users who reported their content, left false reviews, and created imposter accounts, and they wish to engage in depositions of individuals suspected of being involved in the campaign, but only to determine the "extent of those individuals' knowledge regarding the defamatory campaign, and their knowledge of the defamers' identities."

Given that the Plaintiffs claim that their goal from expedited discovery is to identify the John Doe defendants, those identities are best obtained from social media platforms and third-party internet service providers. The court has acknowledged that "only the internet platforms on which the alleged conduct occurred can identify Defendants". Therefore, the information that Plaintiffs seek is best found through the discovery process with the social media platforms and third-party internet service providers, not through non-party individuals like Mrs. Ramos.

In her declaration, Mrs. Ramos indicates that she has not engaged in any of the conduct alleged in the Complaint (online harassment, reporting of social media posts, tortious interference with business relations, intellectual property infringement, etc.) against any of the Plaintiffs; she has no knowledge of the person, persons, or entities purportedly responsible for the conduct alleged in the Complaint; and she has no connection whatsoever to the conduct alleged in the Complaint nor to the legal issues specified therein. Therefore, the only means by which the Plaintiffs may identify the John Doe defendants is through the discovery process with the social media platforms and third-party internet service providers.

Moreover, the United States District Court for the Southern District of Ohio granted Plaintiffs leave to engage in limited scope discovery related to "**depositions** of individuals

suspected of being involved in the campaign but only to determine the 'extent of those individuals' knowledge regarding the defamatory campaign, and their knowledge of the defamers' identities." (emphasis added). In the order, the court expressly **<u>did not</u>** grant document discovery by Plaintiffs for those individuals. If the court had intended to grant document discovery *and* depositions, it would have indicated as such in the order. However, the court did not mince words, and granted limited scope discovery related to depositions only. For this reason, Plaintiffs' subpoena to Mrs. Ramos requesting her to appear for deposition *and* to produce documents regarding her text messages, e-mails, and social media for the Plaintiffs' names, any variations thereof, their law firm names, and the phrase "arreglar sin salir" from June 2020 to present is therefore overbroad, lacks proportionality, is unduly burdensome, seeks information that is not relevant to the underlying complaint, and is contrary to the limited scope discovery granted by the United States District Court for the Southern District of Ohio.

While the subpoena should be tailored to request only information reasonably necessary to address specific issues in the case, Plaintiffs seek impermissible document discovery that covers an arbitrary 28-month period without providing any specifying criteria as to what documents they are looking for and how those documents relate to the identities of the alleged John Doe Defendants. *See Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 813 (9th Cir. 2003).

Furthermore, Plaintiffs' overly broad document discovery subpoena to Mrs. Ramos does not serve a legitimate discovery purpose as the identities of the defendants may be ascertained by the discovery process with the social media platforms and third-party internet service providers. Here, Plaintiffs are attempting a "fishing expedition" through the discovery process that is impermissible under Rule 26(b). *United States ex rel. Carter v. Bridgepoint Educ., Inc.*, 305 F.R.D. 225, 237 (S.D. Cal. 2015) ("Rule 26(b) has never been a license to engage in an unwieldy,

burdensome, and speculative fishing expedition.") Given the cease-and-desist letter that Mrs. Ramos received from Plaintiff Lozano in March of 2021 and now the subpoena at issue in the instant motion, it is evident that Plaintiffs are using the discovery process as retribution against Mrs. Ramos, to harass her, as well as to cause her undue burden and expense.

As a non-party to this litigation, Plaintiffs' counsel "must take reasonable steps to avoid imposing undue burden or expense" on Mrs. Ramos, which has not been done here given the wide breadth of the document discovery requested in the subpoena. *See* Fed. R. Civ. P. 45(d)(1). Consistent with Ninth Circuit precedent, Mrs. Ramos, as a non-party, deserves extra protection by this Court by quashing the subpoena, or, alternatively, issuing a protective order.

## VI.    CONCLUSION

WHEREFORE, Stefania J. Ramos Birch, Esq., *pro se*, respectfully requests that this Court enter an order quashing the third party subpoena issued to her in *Lozano, et al., v. Doe, et al.*, 2:22-cv-03089-ALM-KAJ, based on lack of personal jurisdiction; or, in the alternative, requests that this Court enter a protective order limiting her deposition testimony and discovery in this matter to the issue of her contacts with Ohio/personal jurisdiction (*i.e.*, topics and documents related to the sole Ohio Plaintiff, Angelyne Lisinski, and expressly excluding the phrase "arreglar sin salir"); or, in the alternative, requests a protective order to limit discovery to a deposition only to determine the extent of her knowledge regarding the defamatory campaign alleged in the Complaint and to her knowledge of the defamers' identities; or, if so ordered to comply with the subpoena, she requests a 90-day extension due to her advanced pregnancy, imminent due date, and pre-planned maternity leave.

Respectfully submitted on this 30th day of September 2022,


s// Stefania J. Ramos Birch Esq.
Stefania J. Ramos Birch Esq.
*pro se*
WDW I.D. 6545469
Washington Bar No. 52468
California Bar No. 294827
Ramos Immigration PLLC
P.O. Box 2102
Bothell, WA 98041
(425)218-7458
ramosimmigration@gmail.com

# EXHIBIT A

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of Ohio

| | | |
|---|---|---|
| Lozano, et al. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  2:22-cv-03089 |
| John Does I-X, et al. | ) | |
| | ) | |
| *Defendant* | ) | |

### SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:  
Stefania Ramos Birch  
20801 Highway 99, Ste. 201, Lynnwood, WA 98036  
*(Name of person to whom this subpoena is directed)*

☑ Testimony: **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place: | Alexandra Lozano Immigration Law PLLC 6720 Fort Dent Way, Ste. 230 Tukwila, WA 98188 | Date and Time: 10/07/2022 10:00 am |
|---|---|---|

The deposition will be recorded by this method:  Stenographic and videotape

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: See Exhibit A

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  09/13/2022

| *CLERK OF COURT* | | |
|---|---|---|
| _____ | OR | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  Lozano, et al. _____ , who issues or requests this subpoena, are:

Kirsten Fraser, Organ Law LLP, 1330 Dublin Rd., Columbus, OH 43205, kfraser@organlegal.com, 614-869-3221

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 2:22-cv-03089

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

**(2) For Other Discovery.** A subpoena may command:
  (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) Command to Produce Materials or Permit Inspection.**
  (A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) Quashing or Modifying a Subpoena.**

  (A) When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  (B) When Permitted. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify a subpoena if it requires:

    (i) disclosing a trade secret or other confidential research, development, or commercial information; or
    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
  (A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
  (D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**
  (A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT A

## DEFINITIONS AND INSTRUCTIONS

For purposes of this Subpoena, the following definitions and instructions shall apply:

1.      "Communication(s)" means the transmittal, receipt, disclosure, transfer or exchange of information by any means, and includes any transfer of information, ideas, opinions, or thoughts by any means, written, oral, electronic, or otherwise, at any time or place under any circumstances and includes, without limitation, any meeting, conversation, telephone call, letter, e-mail, telegram, dialogues, discussions, interviews, consultations, agreements, or transfer of document of any kind whatsoever.  The definition is not limited to transfers between persons, but also includes other transfers, such as records and memoranda to file, any written letter, memorandum or other document that was sent by one or more individuals to another or others; any telephone call between one or more individuals and another or others, whether such call was by chance or prearranged, formal or informal; and any conversation or meeting between one or more individuals and another, whether such contact was by chance or prearranged, formal or informal.

2.      "Concerning," "Regarding," "Referring," or "Related" includes, without limitation: referring to, relating to, regarding, describing, evidencing, embodying, constituting, containing, commenting, identifying, comprising, reflecting, discussing, commenting upon, monitoring, modifying, contradicting, quoting, analyzing, criticizing, describing, creating or maintaining, bearing upon, or deriving or arising from.

3.      "Document" and "Documents" shall be construed as broadly as possible and shall mean or refer to all written, typed, printed, recorded or graphic material of any kind, regardless

1

of form or medium, including originals, copies and preliminary and final drafts thereof, whether printed or reproduced by any process, or written or produced by hand, or stored in, maintained on or accessible through computers, disk drives, electronically stored information ("ESI"), magnetic or hard disk or optical storage media as an "active" file or files, electronic files saved as a backup, social networking sites, Webpages, the Cloud, or any other electronic storage media or other information storage or retrieval systems, including without limitation program files, data files and date compilations from which information can be obtained (translated, if necessary, by You, into a reasonably useable form), together with the codes or programming instructions and other materials necessary to understand and use such systems.  "Document" and "Documents" also shall include without limitation any "deleted" but recoverable electronic files on said media, any electronic file fragments, any slack, and/or any metadata.  Electronic mail is included within the definition of the term "Document."  "Document" and "Documents," whether or not claimed to be privileged, confidential or otherwise excludable from discovery, shall include but in no way shall be limited to notes, letters, correspondence, communications, e-mail messages and attachments, telegrams, memoranda, summaries or records of telephone conversations, summaries or records of personal conversations or meetings, diaries, reports, laboratory and research reports and notebooks, recorded experiments, charts, plans, drawings, diagrams, schematic diagrams, HTML, HDL, Verilog, or other computer code, illustrations, product descriptions, produce analyses, requests for proposals, documents related to proposed or actual product improvements or changes, users manuals or guides, installation guides or manuals, technical descriptions or specifications, product repair manuals or guides, photographs, video images, software flow charts or descriptions or specifications, product functional descriptions or specifications, minutes or records of meetings, summaries of interviews, reports, or

2

investigations, opinions or reports of consultants, reports of patent searches, patent appraisals, opinions of counsel, agreements, reports or summaries of negotiations, brochures, pamphlets, advertisements, circulars, trade letters, press releases, drafts of documents, and all other materials fixed in a tangible medium of whatever kind known to You or in Your Possession, Custody, or Control.  The terms "writings," "recordings," and "photographs" are synonymous in meaning and equal in scope to the usage of the term Documents.  A draft or non-identical copy is a separate document within the meaning of the term "Document."

4.      "Including" or "includes" means including, but not limited to.

5.      "Information" shall include individual Documents and records (including associated metadata) whether on paper, film, or other media, as discrete files stored electronically, optically, or magnetically, or as a record within a database, archive, or container file, including emails, messages, word processed Documents, digital presentations, spreadsheets, and database content.

6.      "Lozano" shall refer to Plaintiff Alexandra Lozano, as well as any person or persons acting on her behalf, including, but not limited to, legal counsel, accountants, or any other advisors.

7.      "Alexandra Lozano Immigration Law" shall refer to Alexandra Lozano Immigration Law PLLC, and includes and all of its employees, agents, and/or representatives, including attorneys, accountants, investigators, contractors, consultants, experts, and/or any other persons or entities affiliated with Alexandra Lozano Immigration Law.

8.     "Lisinski" shall refer to Plaintiff Angelyne Lisinski, as well as any person or persons acting on her behalf, including, but not limited to, legal counsel, accountants, or any other advisors.

9.     "Lisinski Law" shall refer to The Lisinski Law Firm, LLC, and all of its employees, agents, and/or representatives, including attorneys, accountants, investigators, contractors, consultants, experts, and/or any other persons or entities affiliated with Lisinski Law.

10.     "Fantacci" shall refer to Plaintiff Giulia Fantacci, as well as any person or persons acting on her behalf, including, but not limited to, legal counsel, accountants, or any other advisors.

11.     "GF Immigration" shall refer to GF Immigration Law, PA, and all of its employees, agents, and/or representatives, including attorneys, accountants, investigators, contractors, consultants, experts, and/or any other persons or entities affiliated with GF Immigration.

12.     "Possession," "Custody," or "Control" includes the joint or several possession, custody or control not only by the person to whom these requests are addressed, but also the joint or several Possession, Custody or Control by each or any other person acting or purporting to act on behalf of the person, whether as employee, attorney, accountant, agent, sponsor, spokesman, or otherwise.

13.     "You," shall mean Stefania Ramos Birch as well as any person or persons acting on her behalf, including, but not limited to, legal counsel, accountants, or any other advisors.

4

14.    The terms "and" and "or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of the request all responses that might otherwise fall outside the scope of this request.

15.    The terms "all," "any," or "each" encompass any and all of the matters discussed.

16.    The use of singular form includes plural, and vice versa.

17.    The use of present tense includes past tense, and vice versa.

18.    Unless otherwise stated, the relevant time period is June 2020 to the present.

19.    *Please note that you are required to bring to the deposition all responsive materials in your possession or control, even if such materials are currently in an electronic format, including text messages, social media messages, social media posts, or emails. We will accept printed out copies of emails, printed screenshots of text messages, and printed screenshots of social media messages and posts at the deposition (though you are under a legal obligation to prevent the destruction of such materials as they are kept in electronic form, and we reserve the right to request such materials in electronic format with metadata in the future)*

## REQUESTED DOCUMENTS TO BE PRODUCED

1. All documents and/or communications, including texts messages and social media posts, referring or related to Lozano and/or Alexandra Lozano Immigration Law.

2. All documents and/or communications, including texts messages and social media posts, referring or related to Lisinski and/or Lisinski Law.

3. All documents and/or communications, including texts messages and social media posts, referring or related to Fantacci and/or GF Immigration.

4. All documents and/or communications, including text messages, referring or related to the phrase "arreglar sin salir."

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON – SEATTLE DIVISION**

|  |  |
|---|---|
| LOZANO, et al., | ) |
|  | ) |
|       Plaintiffs, | ) |
|  | ) |
| v. | ) |
|  | ) |
| DOE, et al., | ) |
|  | ) |
|       Defendants | |

**DECLARATION OF STEFANIA JOANNE RAMOS BIRCH ESQ.**
**IN SUPPORT OF THIRD-PARTY'S MOTION TO QUASH SUBPOENA**

I, Stefania Joanne Ramos Birch Esq., declare:

1. My name is Stefania Joanne Ramos Birch, and I am an attorney residing in the State of Washington, licensed in the States of Washington and California. I am an immigration law practitioner who owns and operates a solo practice located in Lynnwood, Washington. I primarily work with the immigrant community offering legal services in the areas of deportation defense, family-based petitions, asylum, citizenship, residency, and humanitarian benefits such as protection under the Violence Against Women Act ("VAWA"), U-Nonimmigrant Status, and T-Nonimmigrant Status.

2. The underlying Complaint was filed on August 10, 2022 in the Southern District of Ohio, *Lozano, et al. v. Doe, et al*., 2:22-cv-03089.

3. Plaintiffs in the underlying matter are: Alexandra Lozano ("Plaintiff Lozano"), an immigration attorney licensed in and residing in the State of Washington; Angelyne Lisinski ("Plaintiff Lisinski"), an immigration attorney licensed in and residing in the State

of Ohio; and Gulia Fantacci ("Plaintiff Fantacci"), an immigration attorney licensed in and residing in the State of Florida.

4.  Former Plaintiff Lauren Eagan, an immigration attorney licensed in the District of Columbia and residing in the State of Virginia, filed a Motion to Withdraw as a Plaintiff from the litigation on August 23, 2022, which was granted on August 24, 2022.

5.  On August 10, 2022, concurrent with the filing of the Complaint, Plaintiffs filed a Motion for Leave to Serve Third Party Subpoenas prior to a Rule 26(f) conference.

6.  On August 12, 2022, United States Magistrate Judge Kimberly A. Jolson granted Plaintiffs' motion.

7.  On September 16, 2022, I was served with a third-party subpoena for deposition and document production in this matter with a deadline of October 7, 2022.

8.  The subpoena requests documents and/or communications, including text messages, e-mails, and social media posts referring or related to Plaintiff Lozano and/or Alexandra Lozano Immigration Law, Plaintiff Lisinski and/or Lisinski Law, Plaintiff Fantacci and/or DF Immigration, and the phrase "arreglar sin salir" from June 2020 to present.

9.  As I am not a party to the complaint, I had no notice of the suit prior to September 16, 2022. The subpoena thus required me to comply approximately 21 calendar days after service.

10. I am profoundly concerned regarding the present discovery demand as its request for several years of text messages, e-mails, and social media posts is overbroad, overly burdensome, and an invasion of my privacy. Plaintiffs' counsel does not indicate why June 2020 to present is a relevant discovery timeframe, and without explanation is overbroad and arbitrary.

11. Additionally, I believe that Plaintiff Lozano, through counsel, pursued the third-party subpoena against me as retaliation for a comment that I posted on a thread in a private, attorney-only Facebook group in approximately February of 2021, and that she selected the Southern District of Ohio as venue for the present Complaint because, unlike the States of Washington and California, Ohio does not have anti-SLAPP statutes.

12. The comment that I made on the thread in the private Facebook group was to voice my concerns regarding ethical issues related to Plaintiff Lozano's practice of immigration law in the State of Washington. Previously, a client consulted with me for a second opinion after first consulting with Plaintiff Lozano, and indicated that Plaintiff Lozano encouraged him/her to retain her for legal services in the amount of $12,000 to apply for an immigration benefit under VAWA. In order to qualify under VAWA, there must be a finding of battery or extreme cruelty by a U.S. citizen or lawful permanent resident family member. When the client consulted with me, s/he unequivocally indicated that s/he was not subjected to battery or extreme cruelty by their U.S. citizen or lawful permanent resident family member and yet she was encouraged by Plaintiff Lozano to mislead the government in an application for VAWA benefits. Thus, I determined that my client was ineligible for VAWA as previously claimed by Plaintiff Lozano and that Plaintiff Lozano was encouraging him/her to mislead the government for financial benefit ($12,000). My comment on the Facebook thread indicated my concerns to a private group of immigration law practitioners.

13. On the aforementioned Facebook thread, numerous other immigration attorneys posted similar client experiences with Plaintiff Lozano and expressed serious concerns over her business practices as well as deceptive tactics to retain clients. For context, most non-

immigrants who enter the U.S. without inspection must leave the U.S. in order to regularize their immigration status, save for a limited number of exceptions. However, Plaintiff Lozano uses the tagline "arreglar sin salir" or "fix without leaving" heavily in her social media marketing, as though she can help most people to regularize their status without having to follow the normal process of leaving the U.S. She relies on a narrow exception to the general rule based on VAWA (which requires a finding of battery or extreme cruelty by a U.S. citizen or lawful permanent resident family member). Plaintiff Lozano's business practices and social media marketing has been highly controversial within the immigration legal community and resulted in immigration practitioners discussing her practices on the aforementioned Facebook thread.

14. I believe that it is our duty, as lawyers and officers of the court, to openly discuss ethical issues as they affect our practice and our clients, especially as they pertain to a particularly vulnerable group of the immigrant population.

15. On March 11, 2021, I received a letter via email from Plaintiff Lozano, through counsel unlicensed in the State of Washington, entitled: "*Immediate Action Required – Removal of Defamatory Posts on Facebook*" (essentially a cease-and-desist demand). Plaintiff Lozano accused me of alleged "defamation" and demanded the removal of my comment on the Facebook post within 5 calendar days or threatened the initiation of litigation against me. Plaintiff Lozano, through counsel, also sent approximately 25-30[1] of these cease-and-desist letters to immigration attorneys located all over the United States, similarly alleging "defamation" and threatening litigation. (These attorneys also posted comments on the

---

[1] This is my best approximate guess as to how many cease-and-desist letters were sent to immigration attorneys across the U.S.

Facebook thread). Upon learning of the voluminous cease-and-desist letters, the Facebook administrator of the private group almost immediately removed the thread in its entirety, *ipso facto* my comment. Thereafter, Plaintiff Lozano did not initiate any legal proceedings against me. For a year and a half, the matter *seemed* resolved.

16. After receiving service of Plaintiff Lozano's subpoena on September 16, 2022, I contacted Plaintiffs' counsel via telephone on that date and spoke with Senior Counsel Kristen Fraser at Organ Law LLP in Ohio, the attorneys for Plaintiffs. As a non-defendant to the underlying suit, I had no prior knowledge regarding the litigation nor the legal claims at issue therein. I asked her what the litigation was regarding and was informed that it was about reports being made against Plaintiffs' advertising videos on Facebook, TikTok, and Glassdoor such that the videos were being removed by the social media platforms. (I have since read the Complaint in its entirety and am now aware of the lawsuit's underlying legal issues). Plaintiff's counsel made it seem like I was only a person of interest for discovery and deposition due to the prior cease-and-desist demand previously sent by Plaintiff Lozano.

17. During that conversation, I informed Plaintiffs' counsel that I am nine months pregnant with an imminent due date and unable to perform discovery or sit for a deposition on October 7, 2022. Plaintiffs' counsel indicating understanding of my medical situation and suggested moving discovery and deposition to November or December.

18. On September 21, 2022, Plaintiffs' counsel then requested via email document discovery by October 14, 2022 and a Zoom deposition during the third or fourth week of September. On September 23, 2022, I responded to Plaintiffs' counsel with correspondence from my medical provider indicating that my due date is October 17, 2022, I am having pregnancy-

related medical complications, and therefore cannot be expected to be in court or sit for a deposition at any point after October 1, 2022. I indicated via email that my earliest availability would be December. On September 27, 2022, Plaintiffs' counsel requested document production and deposition on December 12.

19. I have not engaged in any of the conduct alleged in the Complaint (online harassment, reporting of social media posts, tortious interference with business relations, intellectual property infringement, etc.) against any of the Plaintiffs.

20. Furthermore, I do not have knowledge of the person, persons, or entities purportedly responsible for the conduct alleged in the Complaint.

21. I have no connection whatsoever to the conduct alleged in the Complaint nor to the legal issues specified therein.

22. Plaintiff Lozano is an immigration practitioner in the same general area as my law office and we have had prior mutual clients in common. I know of her in a professional capacity only. Prior to the receipt of the third-party subpoena on September 16, 2022, I had no prior knowledge of Plaintiff Lisinski or Plaintiff Fantacci or their law offices. I have no professional or social media contacts with either of them. I have engaged in no activity of any kind related to them.

23. I have no contacts with the State of Ohio or Plaintiff Lisinski (the sole Ohio Plaintiff) related to this matter. Therefore, I lack sufficient contacts with the State of Ohio to support the personal jurisdiction of the United States District Court for the Southern District of Ohio to support that court's issuance of a subpoena to me in that venue.

24. I did not and have not harassed Plaintiff Lozano, or any of the other Plaintiffs, as alleged in the Complaint, am I not listed as a defendant in their case, and I have no contacts with

the State of Ohio or Ohio Plaintiff Lisinski to support the personal jurisdiction of the United States District Court for the Southern District of Ohio.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the forgoing is true and correct.

Executed on September 30, 2022, in Lynnwood, Washington.

STEFANIA J. RAMOS BIRCH ESQ.
Declarant

**SWEDISH OBGYN EDMONDS**
21616 76TH AVE W STE 205
EDMONDS WA 98026-7512
Phone: 425-640-4810
Fax: 425-640-4884

 SWEDISH
MEDICAL GROUP

September 23, 2022

Re:   **Stefania Joanne Ramos Birch**
DOB:  **11/18/1988**

To Whom it May Concern:

Stefania Joanne Ramos Birch is under our care for her pregnancy. Her estimated date of delivery is 10/17/22. She is having medical complications and therefore cannot be expected to be in court or sit for deposition at any point after October 1.

Please do not hesitate to call our office if you have questions.

Sincerely,

Randolph Bourne, MD

26626558



# EXHIBIT C

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

LOZANO ET AL.,

     Plaintiffs,

v.

JOHN DOES I-X; JANE DOES I-X; ABC
PARTNERSHIPS I-X; DEF LIMITED LIABILITY
COMPANIES I-X; AND XYZ CORPORATIONS;

     Defendants.

Case No. 2:22-cv-03089

## MOTION FOR LEAVE TO SERVE THIRD PARTY SUBPOENAS
## PRIOR TO A RULE 26(F) CONFERENCE

Pursuant to Fed. R. Civ. P. 26(d), Plaintiffs Alexandra Lozano, Angelyne Lisinski, Giulia

Fantacci, and Lauren Eagan, hereby seek leave to serve third party subpoenas in advance of a

Rule 26(f) conference to ascertain the identities of unknown defendants.  A memorandum in

support is set forth below.

Date: August 10, 2022

Respectfully submitted,

  /s/ Shawn J. Organ
Shawn J. Organ (0042052)
   *Trial Attorney*
Kirsten R. Fraser (0093951)
Ashley T. Merino (0096853)
**ORGAN LAW LLP**
1330 Dublin Road
Columbus, Ohio 43215
614.481.0900
614.481.0904 (f)
sjorgan@organlegal.com
kfraser@organlegal.com
amerino@organlegal.com
*Attorneys for Plaintiffs*

**MEMORANDUM IN SUPPORT**

**Introduction**

Plaintiffs Alexandra Lozano, Angelyne Lisinski, Giulia Fantacci, and Lauren Eagan (collectively, "Plaintiffs"), respectfully request that the Court grant them leave to serve third party subpoenas for written discovery and for depositions prior to a Fed. R. Civ. P. 26(f) conference by way of this motion ("Motion"). Plaintiffs seek this discovery in order to ascertain the identities of anonymous online harassers who have been defaming and otherwise tortuously damaging Plaintiffs on various social media platforms such as TikTok, Google, Facebook, and Instagram. Fed. R. Civ. P. 26(d) allows for this type of discovery upon a showing of good cause. Such good cause exists here, and therefore, Plaintiffs respectfully request the Court grant the instant motion and allow third party subpoenas to be served.

**Factual Background**

**A.      Plaintiffs Are the Target of a Two-Year Defamatory Harassment Campaign by Anonymous Online Detractors and Competitors.**

As alleged in their Complaint, Plaintiffs are immigration attorneys who operate their own successful law firms. They each have specialized knowledge of Violence Against Women Act ("VAWA") visas and Victims of Trafficking in Person or "T" visas, which are misunderstood and underutilized. (Compl. ¶ 10). Each of Plaintiffs have continuously used trademarks in their practices for educational and marketing purposes. (*Id*. ¶¶ 11-23).

In or around August 2020, Plaintiffs became the target of a defamatory, discriminatory harassment campaign by anonymous individuals online (the "Doe Defendants"). (*Id.* ¶ 27). At the start, the Doe Defendants targeted Plaintiffs' accounts on the social media platform TikTok, Inc. ("TikTok"). (*Id.*) The campaign was aimed at disrupting Plaintiffs' ability to educate potential clients about VAWA and T visas, and prohibit Plaintiffs from marketing their services. The campaign also defamed Plaintiffs by painting their ethical and successful legal practices as

2

illegal and scams. The campaign escalated to the point where each of Plaintiffs were banned by TikTok at multiple times over the last year. (*Id.* ¶¶ 31-32, 34, 41, 46-47, 52).

Doe Defendants then spread their campaign to other social media platforms. (*Id.* ¶ 56). For example, Doe Defendants have reported marketing content, paid advertising, and organic posts on Facebook, and have spammed review websites such as Facebook and Google. (*Id.*).

Doe Defendants then escalated their attacks on Plaintiffs by creating imposter accounts on TikTok, Facebook, and Instagram. (*Id.* ¶ 57). These imposter accounts have contacted Plaintiffs' current and prospective clients and requested money, made defamatory comments, and used Plaintiffs' trademarks as a part of their campaign of harassment. (*Id.* ¶¶ 58-68).

**B.    To Date, Plaintiffs Have Been Unable to Identify Their Anonymous Harassers.**

Because the attacks have been conducted online, through third party platforms, and anonymously, Plaintiffs have been unable to ascertain the identities of their harassers. Plaintiffs have engaged platforms like TikTok in informal dispute resolution, but have not received any information relating to the identity of the Doe Defendants. The only way Plaintiffs can obtain the names of the individuals who are tortuously damaging Plaintiffs each day is through third party subpoenas.

**C.    Plaintiffs Seek Limited Discovery Through Third Party Subpoenas for Documents and for Third Party Depositions.**

Through this Motion, Plaintiffs seek the identifying information of the subscribers to Google, Facebook, and TikTok who have 1) reported Plaintiffs' content; 2) made false reviews; and 3) created fraudulent accounts. As for depositions, Plaintiffs seek leave to serve 24 subpoenas on individuals who are known to Plaintiffs, and who Plaintiffs believe are connected to the defamation and infringement campaign. Those depositions would be limited in scope, and

focused on determining the extent of those individuals' knowledge regarding the defamatory campaign, and their knowledge of the defamers' identities.

## Legal Standard

Fed. R. Civ. P. 26(d) provides generally that discovery may not begin prior to the Rule 26(f) conference, but expedited discovery may be conducted prior to that conference when authorized by court order. Courts within the Sixth Circuit require a showing of good cause in order to authorize expedited discovery. *See TCYK, LLC v. Does 1-17*, No. 2:13-cv-535, 2013 WL 2665025, *1 (S.D. Ohio Jun. 12, 2013). Good cause exists where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party. *See Arista Records, LLC v. Does 1-15*, No. 2:07-CV-450, 2007 WL 5254326, *2 (S.D. Ohio Nov. 5, 2007) (quoting *Semitool, Inc. v. Tokoyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). Good cause is often found in cases alleging unfair competition. *See Arista Records,* 2007 WL 5254326 at *2 (citing *Quest Comm. Intern., Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003)). Finally, good cause is determined by the scope of the discovery request. *See Artista Records*, 2007 WL 5254325 at *2.

## Argument

The Court should grant Plaintiffs' Motion because it meets all of the requirements for pre-Rule 26(f) conference discovery as articulated in the Sixth Circuit, and around the country. Specifically, courts regularly grant leave for pre-Rule 26(f) conference discovery to ascertain the identity of defendants in similar circumstances. Further, the requested discovery is the only means Plaintiffs have to determine the identities of their harassers. Last, the requested discovery is limited in scope. Accordingly, good cause exists for an order granting leave for Plaintiffs' to issue the requested third party subpoenas.

4

**A.      Courts Regularly Grant Leave for Pre-Rule 26(f) Conference Discovery to Ascertain the Identity of Defendants in Similar Circumstances.**

The Court should grant Plaintiffs' Motion because federal courts regularly permit plaintiffs to seek discovery prior to a Rule 26(f) conference in order to discovery defendants' identities.  *See 20/20 Financial Consulting, Inc. v. Does 1-5*, Civil Action No. 10-cv-01006, 2010 WL 1904530, *1, (D. Colo. May 11, 2010) (finding good cause existed for pre-Rule 26(f) discovery where Defendants engaged in anonymous online behavior, and would likely remain anonymous unless Plaintiff were able to ascertain Defendants' identities through formal discovery procedures); *Arista Records LLC v. Does 1-19*, 551 F. Supp. 2d. 1, 6 (D.D.C. 2008) (finding good cause for pre-Rule 26(f) discovery because "[d]efendants must be identified before this suit can progress further"); *LaFace Records, LLC, et al v. Does 1-5*, No. 2:07-cv-187, 2007 WL 2867351, * (W.D. Mich. Sept. 27, 2007) (collecting cases, applying the "good cause" standard, and holding that "discovery to allow the [identification] of "Doe" defendants is "routine").  *See also Davis v. Kelly*, 160 F.3d 917 (2d Cir. 1998) (noting courts reject dismissal of suits until plaintiff has had an opportunity for discovery to learn the identities of responsible parties).

*20/20 Financial Consulting* is on all fours with the instant matter.  In *20/20 Financial Consulting*, the plaintiff alleged that unknown "John Does" were posting false and defamatory messages about plaintiff on various internet weblogs and bulletin boards.  *See* 2010 WL 1904530 at *1.  While Plaintiffs had attempted to ascertain identities through pre-lawsuit investigation, their efforts had been unsuccessful.  *Id.*  Thus, the court concluded that the plaintiffs required the benefit of formal discovery mechanisms pursuant to Fed. R. Civ. P. 45 in order to identify the defendants.  *Id.*

The same is true here. Plaintiffs are the victims of an ongoing defamation campaign that has involved false reporting of their social media posts, of posting defamatory reviews online, and of infringing on Plaintiffs' trademarks. Plaintiffs have been unable to identify the individuals responsible for the tortious attacks against them—the tortfeasors have waged their attacks in anonymity and to date their identities have been protected by Internet Service Providers such as Google, Facebook, and TikTok. Instead, Plaintiffs require the subpoena power of the Court to question individuals who are believed to be associated with the Doe Defendants, who are located nationwide, and to gain the identity of the individuals who made defamatory comments online. Because the facts are the same as in *20/20 Financial Consulting*, the result should be the same here, and Plaintiffs should be permitted to issue third party subpoenas to ascertain the identities of the defendants.

### B. The Third Party Subpoenas Requested Are the Only Means Plaintiffs Have of Identifying the Defendants.

Plaintiffs can only identify their harassers through the requested subpoenas. Courts recognize that Internet providers protect their customers' privacy, and thus subpoenas to these third-party providers (like Google, Facebook, and TikTok) are the only means of obtaining subscribers' identifying information. *See Strike 3 Holdings, LLC v. Doe*, 21-CV-4080, 2012 WL 3159809, *2 (Jun. 28, 2021) (collecting cases, noting that without a third-party provider's cooperation, plaintiff would be unable to identify the defendant). Here, the Doe Defendants have made false reports directly to Google, Facebook, and TikTok, and created fraudulent accounts on these platforms that infringe on Plaintiffs' trademarks. Plaintiffs have been made aware of the false reports and fraudulent accounts, but Plaintiffs have no access to any information as to the Doe Defendants' identity. Similarly, Plaintiffs require subpoenas for depositions of specific individuals who are believed to either be a part of the harassing conspiracy, or have knowledge

6

of the individuals who have harassed and defamed Plaintiffs.  These depositions will be tailored

to discover the identities of the Doe Defendants.  Without discovery from third party internet

providers and without discovery from individuals that are connected to the Doe Defendants, it is

impossible for Plaintiffs to seek redress for their injuries.  Therefore, the Court should grant

Plaintiffs' request for discovery.  *See Malibu Media, LLC v. Doe*, No. 12 Cv. 2950, 2012 WL

5987854, *3 (S.D.N.Y Nov. 30, 2012) (finding that without discovery, case could not proceed).

    **C.    The Discovery Is Narrowly Tailored to Identify the Defendants.**

    Plaintiffs are specifically tailoring their subpoenas to identify the defendants.  As for

written discovery, Plaintiffs seek the identifying information of the subscribers to Google,

Facebook, and TikTok who have 1) reported Plaintiffs' content; 2) made false reviews; and 3)

created fraudulent accounts.  As for depositions, Plaintiffs seek leave to serve 24 subpoenas on

individuals who are known to Plaintiffs, and who Plaintiffs believe are connected to the

defamation and infringement campaign.  Those depositions would be limited in scope, and

focused on determining the extent of those individuals' knowledge regarding the defamatory

campaign, and their knowledge of the defamers' identities.  Because the pre-Rule 26(f)

Conference discovery is limited in scope and aimed at identifying the Doe Defendants, the Court

should find good cause exists, and grant Plaintiffs' requests.

**Conclusion**

    For the foregoing reasons, Plaintiffs respectfully request the Court grant Plaintiffs'

Motion for Leave to Serve Third Party Subpoenas.

Date: August 10, 2022            Respectfully submitted,

                                     /s/ Shawn J. Organ

                                    Shawn J. Organ (0042052)

*Trial Attorney*
Kirsten R. Fraser (0093951)
Ashley T. Merino (0096853)
Organ Law LLP
1330 Dublin Road
Columbus, Ohio  43215
614.481.0900
614.481.0904 (f)
sjorgan@organlegal.com
kfraser@organlegal.com
amerino@organlegal.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 10, 2022, the foregoing was

8

electronically filed with the Clerk of Court using the CM/ECF system and was served on all

counsel of record.

                                                       _/s/ Shawn J. Organ_____
                                                           *Attorney for Plaintiffs*

# EXHIBIT D

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**ALEXANDRA LOZANO, et al.,**

        **Plaintiffs,**

      **v.**                            **Civil Action 2:22-cv-3089**
                                                 **Chief Judge Algenon L. Marbley**
                                                 **Magistrate Judge Kimberly A. Jolson**

**JOHN DOES I–X, et al.,**

        **Defendants,**

## OPINION AND ORDER

This matter is before the Court on Plaintiffs' Motion for Leave to Serve Third Party Subpoenas Prior to a Rule 26(f) Conference (Doc. 1). For the following reasons, the Motion is **GRANTED**.

## I.    BACKGROUND

Plaintiffs are four immigration attorneys who bring this suit against unknown Defendants. (Doc. 2, ¶¶ 1–5). Plaintiffs specialize in helping victims of human trafficking and domestic violence in obtaining visas to stay in the United States, and promote their services through their own websites, as well as through internet platforms, including Facebook, Instagram, and TikTok. (*Id.*, ¶¶ 10–26). They allege that numerous Defendants have engaged in a defamation campaign against them. (*Id.*, ¶¶ 27–72). In particular, Defendants purportedly made false reports that Plaintiffs were violating the platforms' community guidelines, which resulted in removal of their content and banning of their accounts, left false reviews of Plaintiffs' businesses online, misappropriated their trademarks to make imposter social media accounts and content, and harassed them with spam phone calls. (*Id.*). Plaintiffs now bring claims against Defendants for defamation, tortious interference, invasion of privacy, intentional infliction of emotional distress,

federal unfair competition under 15 U.S.C. § 1125(a)(1)(A), and civil conspiracy. (*Id.*, ¶¶ 73–113).

Yet Plaintiffs must first learn the identity of Defendants, who are alleged to have waged their defamatory campaign from behind anonymous online profiles. (Doc. 1 at 2). Accordingly, Plaintiffs move to invoke an exception to the general rule that discovery must not commence prior to the scheduling conference required by Federal Rule of Civil Procedure 26(f). (*Id.* at 1).

## II. STANDARD

Federal Rule of Civil Procedure 26 dictates that a party generally may not seek discovery "before the parties have conferred as required by Rule 26(f)," except in limited circumstances, including when authorized by court order. Fed. R. Civ. P. 26(d). "Courts within the Sixth Circuit require a showing of good cause in order to authorize expedited discovery." *TCYK, LLC v. Does 1–17*, No. 2:13-cv-535, 2013 WL 2665025, at *1 (S.D. Ohio Jun. 12, 2013). Good cause exists where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party. *Arista Records, LLC v. Does 1-15*, No. 2:07-CV-450, 2007 WL 5254326, at *2 (S.D. Ohio Nov. 5, 2007) (quoting *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). Good cause is often found in cases alleging unfair competition. *Id.*, at *2 (citing *Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003)). Finally, good cause is determined by the scope of the discovery request. *Id.*, at *2 (citing *Qwest*, 213 F.R.D. at 420).

## III. DISCUSSION

The Court finds that Plaintiffs have demonstrated good cause for expedited discovery. First, Plaintiffs assert an unfair competition claim against Defendants for misappropriation of their trademarks. This type of claim generally supports a finding of good cause. *Id.*, at *3.

Second, only the internet platforms on which the alleged conduct occurred can identify

Defendants. This too favors a finding of good cause. *Id.*, at *3; *20/20 Fin. Consulting, Inc. v. Does 1–5*, No. 10-cv-01006, 2010 WL 1904530, at *1. Without knowing the identity of Defendants, Plaintiffs cannot satisfy their initial obligations in this litigation, including service. *Arista Records*, 2007 WL 5254326, at *2 (citing Fed. R. Civ. P. 4(m)). Particularly where, as here, Defendants have engaged in anonymous online behavior, the likelihood of Plaintiffs identifying them without the aid of discovery mechanisms is low. *20/20 Fin. Consulting*, 2010 WL 1904530, at *1. Indeed, Plaintiffs' efforts to identity Defendants have been unsuccessful. (Doc. 1 at 6). And, without a subpoena, the internet platforms will continue to protect any identifying information. *See, e.g., Strike 3 Holdings, LLC v. Doe*, No. 21-CV-4080, 2021 WL 3159809, at *2 (S.D.N.Y. June 28, 2021); *Digital Sin, Inc. v. Does 1–27*, No. 12 Civ. 3873, 2012 WL 2036035, at *4 (S.D.N.Y. June 6, 2012).

Finally, the scope of the requested discovery is sufficiently narrow. Plaintiffs request from the internet platforms only the identifying information of users who reported their content, left false reviews, and created imposter accounts. (Doc. 1 at 7). Additionally, they wish to engage in depositions of individuals suspected of being involved in the campaign, but only to determine "the extent of those individuals' knowledge regarding the defamatory campaign, and their knowledge of the defamers' identities." (*Id.*). The limited scope of the requested discovery supports a finding of good cause.

Simply put, Plaintiffs have an immediate need for discovery, and that need outweighs any potential prejudice to the responding parties. Good cause therefore supports their motion.

## IV. CONCLUSION

Based on the foregoing, Plaintiffs' Motion for Leave to Serve Third Party Subpoenas Prior to a Rule 26(f) Conference (Doc. 1) is **GRANTED**. Plaintiffs may serve immediate discovery

3

consistent with this Opinion and Order.

IT IS SO ORDERED.


Date:  August 12, 2022                              /s/ Kimberly A. Jolson
                                                    KIMBERLY A. JOLSON
                                                    UNITED STATES MAGISTRATE JUDGE

# EXHIBIT E

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

ALEXANDRA LOZANO
ANGELYNE LISINSKI,
GIULIA FANTACCI, AND
LAUREN EAGAN,

      Plaintiffs,

v.

JOHN DOES I-X; JANE DOES I-X; ABC
PARTNERSHIPS I-X; DEF LIMITED LIABILITY
COMPANIES I-X; AND XYZ CORPORATIONS;

      Defendants.

Case No. 2:22-cv-03089

## **COMPLAINT**

## **JURY DEMAND ENDORSED HEREON**

Now come plaintiffs Alexandra Lozano, Angelyne Lisinski, Giulia Fantacci, and Lauren Eagan (collectively, "Plaintiffs"), and by and through undersigned counsel, for their claims state as follows:

## **PARTIES**

1.    Plaintiff Alexandra Lozano, ("Lozano"), is an immigration attorney who resides in the State of Washington. Lozano is the founder of AMIGA, a supportive and educational group for female immigration attorneys across the United States. Lozano founded AMIGA as a way to connect and educate immigration attorneys, as well as share her extensive knowledge of special forms of immigration relief. Lozano has mentored each of the Plaintiffs in immigration law, and in particular in the use of Violence Against Women Act Visas and Victims of Trafficking in Person Visas.

2.    Plaintiff Angelyne Lisinski, ("Lisinski"), is an immigration attorney who resides in the State of Ohio.

3.     Plaintiff Giulia Fantacci, ("Fantacci"), is an immigration attorney who resides in the State of Florida.

4.     Plaintiff Lauren Eagan, ("Eagan"), is an immigration attorney who resides in the State of Washington.

5.     JOHN and JANE DOES I-X are fictitious persons who may have an interest herein. ABC PARTNERSHIPS I-X, DEF LIMITED LIABILITY COMPANIES I-X, and XYZ CORPORATIONS I-X (collectively, "Defendants") are fictitious entities who may have an interest herein. When the true name of said fictitious persons and/or entities become known to Plaintiffs, Plaintiffs will amend their pleadings to reflect the same.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over the claims raised in this action pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.

7.     Upon information and belief, a substantial portion of Defendants' tortious actions, upon which the allegations in this Complaint are based, occurred, and caused events to occur in the Southern District of Ohio.

8.     Upon information and belief, the Court has personal jurisdiction over Defendants.

9.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this judicial district.

## FACTUAL ALLEGATIONS

10.     Plaintiffs are each immigration attorneys who operate their own successful law firms.  Plaintiffs specialize in helping victims of human trafficking and victims of domestic

violence in obtaining visas to stay in the United States.  Plaintiffs work predominantly with the Latino community.  Specifically, each Plaintiff has specialized knowledge of Violence Against Women Act ("VAWA") visas and Victims of Trafficking in Person or "T" visas, which are misunderstood and underutilized.  These visas can lead to work authorizations and make it possible to obtain green cards without having to leave the country to obtain legal status.

### Plaintiffs' Trademarks

11.    Lozano is the founder of Alexandra Lozano Immigration Law.  Lozano has continuously used Abogada Alexandra in commerce as a trademark since at least as early as 2016 in connection with Lozano's legal services ("Lozano Trademark").  Among other uses, Lozano uses Lozano Trademark A on her website, on the Alexandra Lozano Immigration Law Facebook account page, and on other social media sites like Instagram and TikTok.

12.    As a result of her widespread, continuous, and exclusive use of Lozano Trademark to identify Lozano's legal services and Lozano as the source of those legal services, Lozano owns valid and subsisting common law rights in and to Lozano Trademark.

13.    Lisinski is the founder of Lisinski Law.  Lisinski has continuously used Lisinski Law in commerce as a trademark since at least as early as September 2020 in connection with Lisinski's legal services ("Lisinski Trademark").  Among other uses, Lisinski uses Lisinski Trademark A on her website, on the Lisinski Law Facebook account page, and on other social media sites like Instagram and TikTok.

14.    As a result of her widespread, continuous, and exclusive use of Lisinski Trademark to identify Lisinski's legal services, and Lisinski as the source of those legal services, Lisinski owns valid and subsisting common law rights in and to Lisinski Trademark.

15. Fantacci is the founder of GF Immigration. Fantacci has continuously used ABOGADA JULIA in commerce as a trademark since at least as early as November 2, 2020, in connection with Fantacci's legal services (the "Fantacci Trademark").

16. As a result of her widespread, continuous, and exclusive use of Fantacci Trademark to identify Fantacci's legal services, and Fantacci as the source of those legal services, Fantacci owns valid and subsisting common law rights in and to Fantacci Trademark.

17. On September 3, 2021, GF Immigration filed an application for the Trademark with the U.S. Patent and Trademark Office, which was assigned Serial No. 97011552, and is currently pending in International Class 045 for "Legal Services."

18. Eagan is the founder of Eagan Immigration. Eagan has continuously used Eagan Immigration in commerce as a trademark since at least as early as January 1, 2016, in connection with Eagan's legal services (the "Eagan Trademark").

19. A result of her widespread, continuous, and exclusive use of Eagan Trademark to identify Eagan's legal services, and Eagan as the source of those legal services, Eagan owns valid and subsisting common law rights in and to Eagan Trademark.

20. In addition to her common law trademark, Lozano also coined the phrase, "arreglar sin salir", which translates to "fix without leaving" to raise awareness among the Spanish-speaking immigrant community of the possibilities of the VAWA and T visas.

21. Lozano has continuously used "Arreglar sin salir" in commerce as a trademark since at least as early August 2016 in connection with Lozano's legal services ("Arreglar Sin Salir Trademark").

22. On July 15, 2022, Lozano filed an application for the Arreglar Sin Salir Trademark with the U.S. Patent and Trademark Office, which was assigned Serial No.

97504788, and is currently pending in International Class 041 for "Education and Entertainment Services."

23.     Lozano has permitted each of Plaintiffs to use Arreglar Sin Salir in their marketing and educational materials, particularly on social media websites such as TikTok.

24.     Plaintiffs have expended substantial time, money, and resources marketing, advertising, and promoting their legal services which they have offered, sold, and provided under each of the Trademarks (Lozano Trademark, Lisinski Trademark, Fantacci Trademark, and Eagan Trademark, together with Arreglar Sin Salir are hereinafter referred to as "The Trademarks"), including through Plaintiffs' social media accounts and through other online and offline marketing channels.

25.     Likewise, each of Plaintiffs have expended substantial time, money, and resources marketing, advertising, and promoting her legal services and educational services which they have offered, sold, and provided under Arreglar Sin Salir Trademark.

26.     The legal services offered under each of The Trademarks are of high quality and, as a result of Plaintiffs' expenditures and efforts, the Trademark has come to signify the high quality of the legal services designated by the Trademark, and has acquired incalculable distinction, reputation, and goodwill belonging exclusively to Plaintiffs.

### Doe Defendants Conduct a Defamatory Campaign Against Plaintiffs

27.     Upon information and belief, as early as August 2020, the Plaintiffs became the target of a defamatory, discriminatory harassment campaign by the Doe Defendants.  The Doe Defendants orchestrated this campaign by targeting Plaintiffs' TikTok accounts, making false reports about the contents of Plaintiffs' TikTok postings.

28.     For example, in or about August 2020, upon information and belief, the Doe Defendants falsely reported a video posted to Eagan's TikTok account, claiming the video violated TikTok's Community Guidelines.  The Doe Defendants made the report with the intent of having the video removed and Eagan's account suspended.

29.     Based on this false report, TikTok removed Eagan's video for "violating [its] Community Guidelines."

30.     Eagan filed an appeal with TikTok pursuant to the Community Guidelines, as removal of the video not only caused financial damage to Eagan, as Eagan depends on traffic from TikTok to generate leads, but the removal also caused reputational damage to Eagan. Despite Eagan's appeal, TikTok did not reinstate the video.

31.     The pattern of defamatory harassment against Eagan continued.  For example, in or about December 2020, TikTok notified Eagan that her TikTok account "was temporarily blocked from posting" until December 18, 2020.  In support of that suspension, TikTok claimed Eagan had committed "multiple violations" of its policies.

32.     Though Eagan successfully appealed her first temporary suspension, the harassment continued to the point that TikTok again temporarily blocked Eagan from posting, then temporarily blocked Eagan from posting as well as "commenting, messaging, and other rights."  This pattern has repeated itself multiple times over.

33.     Eagan appealed each of her takedowns and bans with only approximately 50 percent of her videos being reinstated.

34.     The discriminatory campaign against Eagan escalated when on or about July 29, 2021, Eagan received notice that TikTok permanently banned her account, @eaganimmigration, for no apparent reason other than the discriminatory, defamatory reports.

35.     At no time did Eagan's posts in fact violate TikTok's Community Guidelines.

36.     Plaintiffs Lisinski, Fantacci, and Lozano have likewise suffered from the same discriminatory defamation campaign by the Doe Defendants.

37.     Upon information and belief, the Doe Defendants have targeted Lisinski's TikTok account, making discriminatory and defamatory reports regarding Lisinski's posts, resulting in TikTok taking down those posts, even though they did not violate any Community Guidelines.

38.     Though Lisinski had some success appealing TikTok's takedown of Lisinski's videos, by March and April of 2021, Lisisnki rarely won any of her appeals.

39.     For example, on or about the week of July 27, 2021 to August 2, 2021, two out of five of Lisinski's videos on her TikTok account were preemptively flagged by TikTok as promoting illegal goods.  Subsequently, Lisinski's account was then temporarily suspended.

40.     By October 2021, every video that Lisinski posted was automatically held by TikTok for review, without cause.  Some of the videos were released while others were not.

41.     On or about December 12, 2021, TikTok notified Lisinski that her account was permanently banned.  After an appeal, Lisinski's account was reinstated.  Nine days later, on or about December 21, 2021, Lisinski was again permanently banned by TikTok.  She appealed and her account was restored the next day, though she was still banned from posting for seven days.

42.     Lisinski was forced to create a secondary account due to TikTok's repeated improper banning of her main account due to Doe Defendants' actions.

43.     Lisinski's videos are still subject to preemptive review, and upon information and belief, the Doe Defendants continue to falsely report Lisinski's content as violating TikTok's Community Guidelines.  As recently as June 2022, Lisinski has had a video falsely reported and improperly removed.

44.     The reports have steadily increased as now Lisinski has videos falsely flagged for violating community guidelines daily.

45.     At no time have Lisinksi's posts in fact violated the Community Guidelines.

46.     Likewise, upon information and belief, the Doe Defendants have targeted Fantacci's TikTok account, making discriminatory and defamatory reports regarding Fantacci's posts, resulting in TikTok removing those posts, even though they did not violate any Community Guidelines.  Fantacci has also been temporarily suspended by TikTok due to these discriminatory and defamatory reports.

47.     Fantacci was suspended for one week in December 2020.  TikTok cited "illegal activities" as the reason for this suspension.  After this happened, Fantacci struggled to post on TikTok.  During 2021, most of Fantacci's videos were flagged, especially during the first half of the year.

48.     As recently as October 2021, TikTok began preemptively reviewing each video Fantacci attempts to post.

49.     In July 2022, Fantacci had a video removed.  Then, on or about July 6, 2022, Fantacci's entire account was reported and was placed "under review" by TikTok.  Fantacci had four videos and stories removed in July 2022, alone.

50.     At no time have Fantacci's posts in fact violated the Community Guidelines.

51.     Between 2020 and 2021, Lozano has had over 63 videos removed from TikTok.

52.     TikTok has also placed multiple bans on Lozano's account during that time.

53.     In 2022, Lozano's videos have been falsely reported and removed numerous times, for allegedly violating the Community Guidelines.  One of these videos relayed the following simple message: "Blessings to you!"  Not only that, Lozano's account has been suspended because old videos were being falsely reported.

54.     In the two years since the attacks on Plaintiffs began, Lozano has never been able to consistently post on TikTok.

55.     At no time have Lozano's posts in fact violated the Community Guidelines.

56.     Beyond TikTok, Doe Defendants have targeted Plaintiffs' other social media accounts.  For example, Lisinski's marketing content, paid advertising, and organic posts are all being reported to Facebook, even though none of the posts violate any Facebook guidelines.  Her Facebook account is being spammed with false reviews.  Lozano is being targeted with false reviews on Google and Glassdoor.  The list goes on.

## **Fraudulent Accounts**

57.     Each of Plaintiffs have had imposter accounts use The Trademarks on TikTok, Instagram, and Facebook.

58.    Upon information and belief, it is the Doe Defendants who have created the imposter accounts.

59.    For example, there are three imposter accounts impersonating Fantacci on TikTok, using her trademarked logo: @abogadaajulia; @.abogadajulia; and, @abogadajulia.creator.  Fantacci has reported those fake accounts multiple times, but TikTok has done nothing to remove them.

60.    Even more, in April 2022, Fantacci discovered a Facebook account titled "Julia GF" on Facebook.

61.    The fraudulent Facebook account attempted to pass itself off as Fantacci's own account by using variations of Fantacci's name as its title, using pictures Fantacci uses on her actual Facebook page, and using the Fantacci Trademark.

62.    Through the fraudulent Facebook account using the Fantacci Trademark, Doe Defendants requested that potential and current clients contact them at a phone number that did not belong to Fantacci.  The fraudulent Facebook account also directly contacted Fantacci's clients, asking for payments.

63.    Lisinski has been targeted by the same scheme.  Doe Defendants have used the Lisinski Trademark, as well as Lisinski's image, logo, branding, and marketing statements to create fraudulent Facebook accounts.  Doe Defendants have used those fraudulent to message current and potential clients making defamatory statements regarding Lisinski and her legal practice.  Doe Defendants have also asked Lisinski's clients for payments.

64.    Lisinski has also discovered that the Lisinski Trademark, as well as Lisinksi's image, logo, branding, and marketing statements to create fraudulent TikTok accounts.  These

TikTok accounts are reaching out to current and potential clients, and asking for payments as well.

65. The intent of the fraudulent accounts is to confuse current and potential clients, to divert business away from Plaintiffs, and to damage Plaintiffs' reputations through improper competitive harm.

## Unauthorized Use of The Arreglar Sin Salir Trademark

66. An April 7, 2021 article in Mother Jones highlighted The Arreglar Sin Salir Trademark and noted that the hashtag "#arreglarsinsalir" has topped over 1 million views on TikTok.[1] However, the TikTok videos described in the Mother Jones article are nothing like the videos Plaintiffs post. The article describes the posts as following a "simple formula": a Mariachi song or reggaeton beat, a lawyer dancing and flashing work permits, often guaranteeing employment authorization in six months and a green card within two years.

67. These are unauthorized uses of the Arreglar Sin Salir Trademark.

68. Plaintiffs do not use The Arreglar Sin Salir Trademark in this manner, and in particular, do not guarantee results. However, Plaintiffs have been lumped in with these lawyers who have infringed on The Arreglar Sin Salir Trademark, and have become the target of detractors who make false statements regarding Plaintiffs' marketing and ethical conduct.

## The Doe Defendants Have Harassed Plaintiffs Through Spam Phone Calls

69. Upon information and belief, the Doe Defendants have harassed Plaintiffs through spam phone calls.

---

[1] https://www.motherjones.com/politics/2021/04/the-tiktok-trend-that-has-immigration-lawyers-worried/

70.     Lisinski and Eagan received numerous phone calls over a span of several weeks in December 2020 through January 2021.

71.     Along with the phone calls, Eagan's firm received 10-20 explicit and inappropriate messages from a single phone number.

72.     Upon information and belief, the same Doe Defendants who have defamed Plaintiffs on TikTok and other social media websites are also responsible for the harassing phone calls and messages.

## COUNT I
## (Defamation)

73.     Plaintiffs incorporate and reallege the preceding paragraphs as if fully set forth herein.

74.     Doe Defendants have made false statements about Plaintiffs in relation to their employment, quality of work, and job performance.

75.     Doe Defendants have made false statements about Plaintiffs' ethics, which reflect upon Plaintiffs' character and brings each of them into ridicule, hatred, or contempt.

76.     These false statements include but are not limited to: (i) reporting Plaintiffs' videos to TikTok for violating Community Guidelines, including accusing Plaintiffs of promoting illegal goods; (ii) making false reports to Facebook; (iii) posting false and defamatory reviews on Google, Facebook, and Glassdoor; and (iv) making false statements to current and prospective clients through TikTok, Facebook, and other social media messaging features.

77.     These false statements were made to third parties, including, but not limited to TikTok, Facebook, Google, Glassdoor, and current and potential clients.

78.     Doe Defendants made the false statements with negligence and/or actual malice.

79.     The false statements were directed at Plaintiffs' occupation and profession, and therefore constitute defamation per se or caused special harm to Plaintiffs.

80.     As a direct and proximate result of Doe Defendants' defamation, Plaintiffs have been damaged monetarily, emotionally, and in reputation, in an amount that exceeds $75,000.

## COUNT II
## (Tortious Interference)

81.     Plaintiffs incorporate and reallege the preceding paragraphs as if fully set forth herein.

82.     Plaintiffs have existing business relationships with individuals, entities, and organizations relating to their businesses.

83.     Plaintiffs have a reasonable expectation of future business relationships with individuals, entities, and organizations with whom Plaintiffs do business or whom Plaintiffs may reasonably expect to do business.

84.     At all material times hereto, Doe Defendants were aware of Plaintiffs' existing and/or prospective business relationships.

85.     Upon information and belief, Doe Defendants intentionally and/or purposefully interfered with Plaintiffs' existing and prospective relationships by making false and defamatory reports, including but not limited to : (i) reporting Plaintiffs' videos to TikTok for violating Community Guidelines, including accusing Plaintiffs of promoting illegal goods; (ii) making false reports to Facebook; (iii) posting false and defamatory reviews on Google, Facebook, and Glassdoor; and (iv) making false statements to current and prospective clients through TikTok,

Facebook, and other social media messaging features. These reports were made with the goal of interfering with Plaintiffs' business relationships.

86.     In interfering with Plaintiffs' existing and prospective relationships, Doe Defendants acted with malice.

87.     Doe Defendants lacked any justification or privilege to make such reports and interference.

88.     As a direct and proximate result of Doe Defendants' tortious interference, Plaintiffs have been damaged monetarily, emotionally, and in reputation, in an amount that exceeds $75,000.

## COUNT III
### (Invasion of Privacy – False Light)

89.     Plaintiffs incorporate and reallege the preceding paragraphs as if fully set forth herein.

90.     Doe Defendants have made false reports regarding Plaintiffs, including but not limited to: (i) reporting Plaintiffs' videos to TikTok for violating Community Guidelines, including accusing Plaintiffs of promoting illegal goods; (ii) making false reports to Facebook; (iii) posting false and defamatory reviews on Google, Facebook, and Glassdoor; and (iv) making false statements to current and prospective clients through TikTok, Facebook, and other social media messaging features Doe Defendants have made these false reports to third parties, including but not limited to TikTok.

91.     The false reports have placed Plaintiffs in a false light.

92.     The false reports are highly offensive to a reasonable person and have been shared with the intent of causing harm.

93.     Doe Defendants knew the false reports were false or acted in reckless disregard as to the falsity of the false reports.

94.     Doe Defendants acted with malice in making the false reports.

95.     As a direct and proximate result of Doe Defendants' tortious actions, Plaintiffs have been damaged monetarily, emotionally, and in reputation, in an amount that exceeds $75,000.

## COUNT IV
### (Intentional Infliction of Emotional Distress)

96.     Plaintiffs incorporate and reallege the preceding paragraphs as if fully set forth herein.

97.     By sharing the false reports, convincing TikTok to remove Plaintiffs' posts and videos resulting in the suspension of Plaintiffs' accounts, harming Plaintiffs' businesses, and harassing the Plaintiffs through the reports to TikTok, as well as phone calls and other means, and by creating fraudulent imposter accounts, Doe Defendants have engaged in extreme and outrageous conduct.

98.     Doe Defendants engaged in extreme and outrageous conduct with the intention to cause Plaintiffs severe emotional distress.

99.     Doe Defendants knew and/or recklessly disregarded the near certainty that such emotional distress would result from their conduct.

100.   Doe Defendants acted with malice when making false reports, including those to TikTok, and in harassing the Plaintiffs.

101.   As a direct and proximate result of Doe Defendants' tortious actions, Plaintiffs have been damaged monetarily, emotionally, and in reputation, in an amount that exceeds $75,000.

## COUNT V

## (Federal Unfair Competition – 15 U.S.C. § 1125(a)(1)(A))

102.   Plaintiffs incorporate and reallege the preceding paragraphs as if fully set forth herein.

103.   Doe Defendants' unauthorized use in commerce of The Trademarks, through unauthorized use of The Trademarks as well as the fraudulent Facebook and TikTok Accounts, has already deceived and is likely to deceive consumers of legal services as to the origin, source, sponsorship, or affiliation of Doe Defendants' fraudulent services (through impersonation of Plaintiffs) and is likely to cause consumers to believe, contrary to fact, that Doe Defendants' fraudulent services are sold, authorized, endorsed, or sponsored by Plaintiffs, or that Doe Defendants are in some way affiliated with or sponsored by Plaintiffs, or that Doe Defendants actually are Plaintiffs.

104.   Doe Defendants' unauthorized use in commerce of The Trademarks as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

105.   Upon information and belief, Defendants committed the conduct alleged herein with full knowledge of Plaintiffs' prior rights in The Trademarks and with the willful intent to cause confusion, mistake, or deception and trade on Plaintiffs' reputation and goodwill.

106.    Upon information and belief, Doe Defendants' conduct as alleged herein is willful and is intended to cause, has caused, and is likely to continue to cause confusion, mistake, or deception as to the affiliation, connection, or association of Doe Defendants with Plaintiffs.

107.    Doe Defendants' conduct as alleged herein, constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

108.    Doe Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiffs, and to their goodwill and reputation, and will continue to both damage Plaintiffs and confuse the public unless enjoined by this Court.  Plaintiffs have no adequate remedy at law.

109.    Plaintiffs are entitled to, among other relief, injunctive relief and an award of actual damages, Doe Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.


## COUNT VI
### (Civil Conspiracy)

110.    Plaintiffs incorporate and reallege the preceding paragraphs as if fully set forth herein.

111.    Doe Defendants participated in a malicious combination with the purpose of causing damage to Plaintiffs' businesses and reputations.

112.    Doe Defendants, each and collectively, engaged in unlawful activity including defamation, tortious interference, invasion of privacy, intentional infliction of emotional distress, and unfair competition independently and in conspiracy with each other.

113. As a direct and proximate result of Doe Defendants' tortious actions, Plaintiffs have been damaged monetarily, emotionally, and in reputation, in an amount that exceeds $75,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this court enter judgment in their favor and issue the following relief as applicable:

1. Preliminary and permanent injunctive relief as against Doe Defendants from defaming and harassing Plaintiffs;

2. An award of general, specific, compensatory, punitive, special, and exemplary damages in an amount exceeding $75,000;

3. Pre- and post-judgment interest;

4. An award of Plaintiffs' reasonable attorneys' fees, costs, and expenses incurred; and,

5. Such other relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs respectfully request a trial by jury on all claim so triable.

Date: August 10, 2022                    Respectfully submitted,

                                         /s/ Shawn J. Organ
                                         Shawn J. Organ (0042052)
                                           *Trial Attorney*
                                         Kirsten R. Fraser (0093951)
                                         Ashley T. Merino (0096853)
                                         **ORGAN LAW LLP**
                                         1330 Dublin Road
                                         Columbus, Ohio 43215
                                         614.481.0900

614.481.0904 (f)
sjorgan@organlegal.com
kfraser@organlegal.com
amerino@organlegal.com

*Attorneys for Plaintiffs*

JS 44 (Rev. 04/21)

**CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Alexandra Lozano, Angelyne Lisinski, Giulia Fantacci, and Lauren Eagan | John Does I-X; Jane Does I-X; ABC Partnerships 1-X; DEF Limited Liability Companies I-X; and XYZ Corporations |

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
See attachment

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [x] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury - Product Liability | 690 Other | 423 Withdrawal 28 USC 157 | 376 Qui Tam (31 USC 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | | | 820 Copyrights | 410 Antitrust |
| 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers' Liability | | | 830 Patent | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine | 368 Asbestos Personal Injury Product Liability | | 835 Patent - Abbreviated New Drug Application | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [x] 840 Trademark | 460 Deportation |
| 153 Recovery of Overpayment of Veteran's Benefits | 350 Motor Vehicle | 370 Other Fraud | 710 Fair Labor Standards Act | 880 Defend Trade Secrets Act of 2016 | 470 Racketeer Influenced and Corrupt Organizations |
| 160 Stockholders' Suits | 355 Motor Vehicle Product Liability | 371 Truth in Lending | 720 Labor/Management Relations | | 480 Consumer Credit (15 USC 1681 or 1692) |
| 190 Other Contract | 360 Other Personal Injury | 380 Other Personal Property Damage | 740 Railway Labor Act | **SOCIAL SECURITY** | 485 Telephone Consumer Protection Act |
| 195 Contract Product Liability | 362 Personal Injury - Medical Malpractice | 385 Property Damage Product Liability | 751 Family and Medical Leave Act | 861 HIA (1395ff) | 490 Cable/Sat TV |
| 196 Franchise | | | 790 Other Labor Litigation | 862 Black Lung (923) | 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 791 Employee Retirement Income Security Act | 863 DIWC/DIWW (405(g)) | 890 Other Statutory Actions |
| 210 Land Condemnation | 440 Other Civil Rights | **Habeas Corpus:** | | 864 SSID Title XVI | 891 Agricultural Acts |
| 220 Foreclosure | 441 Voting | 463 Alien Detainee | | 865 RSI (405(g)) | 893 Environmental Matters |
| 230 Rent Lease & Ejectment | 442 Employment | 510 Motions to Vacate Sentence | | | 895 Freedom of Information Act |
| 240 Torts to Land | 443 Housing/ Accommodations | 530 General | | **FEDERAL TAX SUITS** | 896 Arbitration |
| 245 Tort Product Liability | 445 Amer. w/Disabilities - Employment | 535 Death Penalty | **IMMIGRATION** | 870 Taxes (U.S. Plaintiff or Defendant) | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 290 All Other Real Property | 446 Amer. w/Disabilities - Other | **Other:** | 462 Naturalization Application | 871 IRS—Third Party 26 USC 7609 | 950 Constitutionality of State Statutes |
| | 448 Education | 540 Mandamus & Other | 465 Other Immigration Actions | | |
| | | 550 Civil Rights | | | |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
28 U.S. Code § 1338

Brief description of cause:
Claim for Federal Unfair Competition

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 75,000

CHECK YES only if demanded in complaint:
JURY DEMAND:  [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE  08/10/2022

SIGNATURE OF ATTORNEY OF RECORD  /s/ Shawn J. Organ

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

**ATTACHMENT**

Shawn J. Organ (0042052)
Organ Law LLP
1330 Dublin Road
Columbus, Ohio 43215
614.481.0901
614.481.0904 (f)
sjorgan@organlegal.com


Kirsten R. Fraser (0093951)
Organ Law LLP
1330 Dublin Road
Columbus, Ohio 43215
614.869.3221
614.481.0904 (f)
kfraser@organlegal.com


Ashley T. Merino (0096853)
Organ Law LLP
1330 Dublin Road
Columbus, Ohio 43215
614.481.0907
614.481.0904 (f)
amerino@organlegal.com

# EXHIBIT F



## RAEESABBAS MOHAMED

Founding Partner
480-331-9397
raees@rmwarnerlaw.com
8283 North Hayden Road #229
Scottsdale, AZ 85258

March 11, 2021

***SENT VIA FIRST CLASS U.S. MAIL AND EMAIL***
Stefania Joanne Ramos Birch
P.O. Box 2102
Bothell, WA 98041
Email: ramosimmigration@gmail.com

*Re: Immediate Action Required – Removal of Defamatory Posts on Facebook*

Dear Ms. Ramos Birch,

My firm has been retained to represent Alexandra Lozano, Esq. ("Client") with regard to above-referenced false and defamatory statements that you have posted on Facebook in a "private" group named "Nerdy Immigration Lawyers." The defamatory statements are outlined below ("Defamatory Statements"). The Defamatory Statements are not only false, but also portray my Client in a false light, and are extremely damaging to my Client, a professional lawyer in Washington. The postings at issue are attached as **Exhibit A** for your reference.

The Defamatory Statements are false, defamatory, and have caused significant harm to my Client. You must delete the Defamatory Statements **immediately, and confirm the same within 5 calendar days of this demand**; otherwise, our firm will have no choice but to sue you, and seek damages for the harm caused to my Client's professional reputation.

### Background Facts

My Client is a professional attorney in Washington, and is the founder of AMIGA Lawyers, a successful private group of female attorneys throughout the United States, who support and uplift one another. She is known for her effective immigration practices, specifically due to her work with I-360 Violence Against Women Act ("VAWA") and T-Visa cases. My Client has filed over 1000 VAWA cases, and has only lost one due to no fault of her own. My Client works around the clock to serve disadvantaged communities, and uses the reputation she has built for herself to help hundreds of clients gain lawful status in the United States. Because of her knowledge, experience, and ability to help undocumented residents have a brighter future, my Client utilizes the power of social media to educate the public and other attorneys on the benefits of taking advantage of all opportunities available under the law, including screening clients for different immigration relief options.

Demand letter to Stefania Joanne Ramos Birch
3/11/2021
Page 2 of 9

On July 20, 2016, a private Facebook group called "Nerdy Immigration Lawyers" was formed as "a general immigration law discussion group for and by immigration lawyers" (the "Group"). The Group currently has over 5,500 members of the legal community. My Client, who recently left the Group on February 16, 2021, has been the target of defamatory attacks, such as your Defamatory Statements, in the Group by its members, that has affected her reputation in the immigration law community. You have been identified as one of the Group's members and as one of the active participants in the campaign to smear my Client's reputation and ultimately hurt her business. We understand that lawyers may have differing opinions on points of law, and even immigration lawyers serving the same communities may have opposite viewpoints; however, this does not justify publishing *false and defamatory* purported statements of fact about my Client.

### A. Violence Against Women Act and other Immigration Relief

The best way to help you understand why your statements are defamatory is by giving you a summary of the law that is the focal point of my Client's educational videos. A major, underutilized form of immigration relief is found under VAWA. VAWA includes provisions to allow noncitizen-victims of physical and mental abuse to obtain immigration relief independent of their abusive spouse or parent.[1] For an individual to be eligible to self-petition for relief under VAWA, she or he must be: a spouse or former spouse (under specific circumstances) of an abusive U.S. citizen or lawful permanent resident; a child of abusive citizens or lawful permanent residents who file before turning 25; a noncitizen parent of an abused noncitizen child, even if the noncitizen parent is not herself abused; and a non-citizen spouse whose children are abused by the child's other U.S.-citizen or LPR parent.[2] Although the legal standard for abuse is "battery or extreme cruelty," there is no known threshold for how severe the abuse must be to constitute battery or extreme cruelty. It is up to the government to determine whether an individual has satisfied the eligibility requirements and met that legal standard. Aside from the fact that there is no limit on how many self-petitions may be filed annually, everyone has a right to file and be heard if they believe that they meet the criteria listed in VAWA. It would be outrageous to think that one person's abuse is more important than another's abuse, and therefore, some people should accept their abuse because others may be having it "worse."

Another form of immigration relief is referred to as a T-Visa, which was created under the Battered Immigrant Women Protection Act of 2000. The T-Visa provides relief to victims of severe forms of human trafficking, which is defined as (i) "sex trafficking in which a commercial sex act is induced," or in which the person induced is under 18 years of age; or (ii) "recruitment, harboring, transportation, provision, or obtaining of a person for labor or services, through the use of force…for the purpose of subjection to involuntary servitude."[3] Once again, as long as this criterion is met, an individual is eligible for relief under the T-Visa. Aside from the definitional language of "severe forms of trafficking in persons," there is no known legal threshold of how severe the abuse and/or trafficking must be to become eligible. These two forms of relief, which

---

[1] INA § 245(a); 8 U.S.C. § 1255(a).
[2] INA § 204(a)(1)(A), 8 U.S.C. § 1154(a)(1)(A).
[3] 22 U.S.C. § 7102(11); Trafficking Victims Protection Act of 2000 (TVPA), Pub. L. No. 106-386, Div. A, 114 Stat. 1470.

Demand letter to Stefania Joanne Ramos Birch
3/11/2021
Page 3 of 9

my Client is extremely knowledgeable and experienced in, have been the subject of my Client's educational videos, and as such, the crux of your Defamatory Statements.

**B. Washington's Rules of Professional Conduct and Screening Clients**

In the targeted attacks by you and other members of the Group, my Client was accused of deceiving the public and using unethical tactics by questioning clients to determine if they qualify for the forms of immigration relief described above. As a lawyer yourself, it is my hope that you are more than aware that attorneys are governed by the Rules of Professional Conduct. Under Washington's Rules of Professional Conduct ("RPC"), a lawyer has certain mandatory and permissive duties that allow my Client, and other attorneys, to consult with their clients and engage in a form of questioning and soliciting of information so they may best represent their clients' interests. These relevant rules include, but are not limited to, the following:

*RPC 1.3*—A lawyer shall act with reasonable diligence and promptness in representing a client. In Comment 1, the attorney is guided by the following: Although a lawyer is not bound to press for every advantage that might be realized for a client, it is not unethical to do so. A lawyer has professional discretion to determine the means by which a matter should be pursued.

*RPC 1.4(a)(2)*—A lawyer shall reasonably consult with the client about the means by which the client's objectives are to be accomplished.

*RPC 2.1*—A lawyer shall exercise independent professional judgment and render candid advice. In rendering advice, a lawyer may refer not only to law, but to other considerations such as moral, economic, social and political factors, that may be relevant to the client's situation.

Although a lawyer may not directly solicit professional employment under RPC 7.3(a), that is not what my Client was doing. My Client is not only ethically sound in asking her clients questions to determine the best way to represent them, but is also a successful and trusted attorney because of the way she vigorously represents her clients' interests. That being said, the RPC applies to lawyers inside and outside the scope of their role as an attorney. Under *RPC 8.4*, it is professional misconduct for a lawyer to: (i) commit a criminal act that reflects adversely on the lawyer's fitness as a lawyer (*RPC 8.4(b)*), and (ii) engage in conduct demonstrating unfitness to practice law (*RPC 8.4(n)*). Therefore, it is unethical for an attorney, such as yourself, to behave in such a manner that could possibly constitute harassment. However, my Client has no intention of pursuing a harassment claim or bar complaint in the hope that these Defamatory Statements were an error in judgment and will be expeditiously removed.

<u>**Your Defamatory Statements**</u>

Please reference your statements attached in **Exhibit A**. With regard to these statements:

1. <u>False</u>: "She quoted someone $12K for a VAWA…"

Demand letter to Stefania Joanne Ramos Birch
3/11/2021
Page 4 of 9

> **Truth**: This statement creates a false impression that $12,000 for a VAWA application is unreasonable, and that my Client is violating her ethical obligations under Washington State's Rules of Professional Conduct. RPC 1.5 states that a lawyer should not charge *unreasonable* fees, and then lists a myriad of factors that are considered when determining if fees are unreasonable. My Client's time, labor, and knowledge, the time limitations set by the circumstances, the difficulty of the process, and the skill required to perform this particular service all contribute to why my Client charges the fees she does, and why it is reasonable under the circumstances. My Client is a leading expert in the field and her services are highly sought after. She is ethically sound in charging $12,000 for a VAWA case, and it is a falsity to suggest otherwise.

2. <u>False</u>: "…when the person wasn't even eligible."

> **Truth**: This statement is false because the context of the entire statement tells the reader that my Client quoted a potential client for a service that she knew she could not perform. My Client has never offered her services and expected a client pay for those services without using diligence to determine if the client could actually be helped. My Client is aware that other lawyers in the immigration field do not believe in or agree with her successful strategies to help her clients gain lawful permanent residence under VAWA. However, it does not make my Client's methods any less accurate or ethical than the strategies of other attorneys in the field. Finally, you represent to the public to have specialized knowledge of the circumstances of a particular client and the advice that my Client offered said client – if you do not have said knowledge, then this is further evidence of the malice with which you are attacking my Client. But even if you do have such specialized knowledge of a particular client encounter and what was stated to the client (which you cannot possible have, as you would only have one-side of the consultation), you statement presumes that there is no professional discretion as to eligibility under VAWA.

3. <u>False</u>: "I've tried to encourage clients to report her."

> **Truth**: This statement creates a false impression that my Client has acted in a way or violated a rule to merit being reported. RPC 8.3 states that a lawyer who knows that another lawyer committed a violation of the RPC and that violation raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer should report that lawyer's professional misconduct. First, my Client has not violated any rules for which your comments suggest. Second, other immigration attorneys may not agree with my Client's business practices, but my Client has not raised a "substantial question" as to her fitness as an attorney. She has been an exceptional resource for other attorneys in the field and vigorously advocates for her clients' interests, while working within the limits of the law and the RPC. Finally, your "encouragement" itself, i.e., urging clients to fabricate false complaints her, is unethical.

Demand letter to Stefania Joanne Ramos Birch
3/11/2021
Page 5 of 9

## Defamation, Defamation Per Se, and Defamation by Implication

The damaging statements contained within the Defamatory Statements on Facebook in the Group are substantial. Specifically, the post contains provably false statements such as the allegation that my Client has committed a violation in her profession that merits being reported. By accusing my Client of conduct that targets her profession, the Defamatory Statements are defamatory *per se*, and the statements harm her reputation in the minds of reasonably minded people and are actionable at law as set forth below.

To be clear, my Client has never engaged in any sort of the misconduct you described. As a result of these Defamatory Statements, her reputation has suffered, and she lives in fear of her reputation being continually harmed by the publicly harmful statements, and continual emotional distress. If the Defamatory Statements are allowed to persist, any person, including potential clients and others business contacts, may avoid her legal and educational services due to the natural desire to avoid a public association with the misconduct stated, and will cause significant harm to my Client's professional legal practice and business as an immigration law educator. All of these accusations and Defamatory Statements are highly defamatory and actionable by law, which I will explain below.

## Defamation Elements

The four main elements for defamation are: (i) a false and defamatory statement concerning the plaintiff; (ii) an unprivileged publication to a third party; (iii) fault amounting at least to negligence on the part of the publisher; and (iv) "actionability" of the statement either due to special harm caused by the publication or irrespective of special harm given the nature of the allegation. See *Restatement (Second) of Torts § 558*. *Seley–Radtke v. Hosmane*, 2016 WL 6871523 *1. Specifically, under Washington law, in order to prove a claim for defamation, the plaintiff must establish: (i) falsity of the statement, (ii) an unprivileged communication to a third party, (iii) fault on the part of the defendant, and (iv) damages. *Mark v. Seattle Times*, 635 P.2d 1081 (Wash. 1981).

Written communications which are claimed to be libelous fall into one of the three classes: (a) those which on their face and without the aid of any extrinsic matter come within the definition above set forth, (b) those which on their face do not fall within the definition but which by reason of special extraneous circumstances actually do, and (c) those which even though aided by the surrounding circumstances cannot reasonably be held to fall within it.

As noted above, the first type, Class (a), is applicable here and is called **'defamation per se'** because it needs no allegation or existence of extraneous surrounding circumstances to make it such. *Hearst Corp. v. Hughes*, 297 Md. 112, 118, 466 A.2d 486, 489 (1983); *See also Lawnwood Medical Center, Inc. v. Sadow*, 43 So.3d 710, 722 (2010) ($5 million punitive damages award upheld where "comments constituted slander per se, comments were intended to destroy surgeon's career and professional reputation in community, comments would likely have significant professional consequences, and award was legally equal and proportionate to actual harm inflicted"). A statement is defamatory per se when the defamatory character of the statement is

Demand letter to Stefania Joanne Ramos Birch
3/11/2021
Page 6 of 9

apparent on its face – and in this case, about one's profession; that is, when the words used are of such a nature that the court can presume as a matter of law that the communication will tend to degrade or disgrace the party defamed.

An allegation that impugns a person's profession is defamation per se, and damages are presumed. *Id.* My Client is an immigration attorney and makes a living providing advice to clients who need immigration help. You even went so far as to imply my Client is charging unreasonable fees for meritless cases, and deserves to be reported. As such, because your comments about my Client are defamatory on their face, and **are presumed to damage my Client**, a reputable lawyer.

The second type, Class (b), is a communication that is categorized as "defamation by implication, where even literally true statements can be defamatory where they create a false impression. *See Stevens v. Iowa Newspapers, Inc.,* 728 N.W.2d 823, 827 (Iowa 2007) ("Defamation by implication arises, not from what is stated, but from what is implied when a defendant '(1) juxtaposes a series of facts so as to imply a defamatory connection between them, or (2) creates a defamatory implication by omitting facts, [such that] he may be held responsible for the defamatory implication ....' " (quoting W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 116, at 117 (5th ed. Supp.1988))).

Your post contains statements that would fit under the penumbra of Class (b) statements, specifically for example, the statements stating my Client urges clients to file VAWA cases that are not "eligible" cases, and charges $12,000 for said cases. As such, the statement, even if literally true, implies a defamatory statement that my Client is over-charging her clients for her services and has no sound basis for charging that amount – all for which you may also be held liable for damages, for these reasons.

As stated above, in this case damages are *presumed* because the Defamatory Statements directly pertain to my Client's honesty, integrity, and profession. As a direct and proximate result of the Defamatory Statements, my Client has sustained, and continues to sustain, immediate and irreparable harm and injury including, but not limited to, damage to reputation, loss of expected benefit, loss of goodwill, loss of business relations with existing and future business prospects, loss of family life), and loss of competitive advantage, opportunity, and/or expectancy. Furthermore, the Defamatory Statements are and would be, highly offensive to a reasonable person and have been published to a person or persons with the intent of causing harm to the reputation and economic interests of my Client, among many other damages described herein. Indeed, the post is targeted towards those in the area of my Client, as evidenced by the fact that the Group is a Facebook group of other immigration attorneys across the United States, and is aimed at causing the most damage to her by being posted under a video connected to her name and business.

In making and publishing the Defamatory Statements, you obviously acted maliciously, wilfully, wantonly, and unlawfully. We've identified examples of your intentions behind your Defamatory Statements, which were designed to bring harm to my Client. You had knowledge of, or acted in, negligent and/or reckless disregard as to the falsity of the content published and the false and negative light in which my Client would be placed. Furthermore, your actions, omissions, and conduct outlined above were aggravated, outrageous, and guided by evil motives

Demand letter to Stefania Joanne Ramos Birch
3/11/2021
Page 7 of 9

wherein they intended to harm my Client and/or consciously pursued a course of conduct knowing that created a substantial risk of significant harm to her.  As such, I believe my Client would obtain punitive damages in any action filed against you.

### Burden of Proof and Other Issues

My Client is confident that you would be unable to carry your burden of proving the truth of any of the Defamatory Statements since she has the applicable law on her side and the video in which the Defamatory Statements were directed. The law is very specific, and states that unless the publication in the instant case was privileged or qualifiedly privileged, the proof of publication of the article carried with it the presumption of its falsity and of malice toward the plaintiff and the burden was upon the defendant to prove both the truth of the publication and a lack of malice toward plaintiff. Furthermore, it makes no difference if the poster and commenters thought that what they said was true, as every person is presumed to intend the natural and probable consequences of his own act.  Belief in the truth of their charges does, however, go to the heart of punitive damages, and the jury might consider the spirit with which something was spoken in determining whether the speaker was vicious, unreasonably thoughtless. As such, my Client would prevail in an action against the poster and commenters as they have no qualified privilege for making the Defamatory Statements of fact that damage my Client.

### Summary

All of these Defamatory Statements either accuse my Client of not being moral, or harm her in her profession, trade, or business. This would allow my Client to recover damages without actual proof of loss.  We would note, however, that my Client would be able to also prove the existence of actual damages, including but not limited to emotional distress, arising from your campaign of defamation, which is impacting her life dramatically.

Based on the above, we respectfully request that you delete the Defamatory Statements **immediately, and within no later than 5 calendar days from the date of this letter,** and refrain from publishing such statements.

If you do not plan to assist us voluntarily, please let us know immediately so that we can start the litigation process in order to take action against you. In addition, we would also request that you keep any and all records, reports, analytics, or similar that we would request (in the event of litigation) that would be used to identify the person(s) who provided the information as well as the identity of any other posters.

Finally, we are aware that you may desire to publish this demand on social media in furtherance of your defamation campaign against my Client, and in order to cause the maximum reputational carnage as possible.  In the unfortunate even that you do so, we will use your publication as further evidence of your malicious intent in any future litigation against you.

This letter is not meant to be a release, waiver, or admission by my Client.  Thank you for your assistance.

Demand letter to Stefania Joanne Ramos Birch
3/11/2021
Page 8 of 9

Sincerely,

Raees Mohamed

Enclosures: Defamatory Post

Demand letter to Stefania Joanne Ramos Birch
3/11/2021
Page 9 of 9

## EXHIBIT A
## YOUR DEFAMATORY STATEMENTS



# EXHIBIT G

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON – SEATTLE DIVISION**

| | | |
|---|---|---|
| LOZANO, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. |
| | ) | |
| v. | ) | Judge |
| | ) | |
| DOE, et al., | ) | Magistrate Judge |
| | ) | |
| Defendants | ) | |

### <u>PROPOSED ORDER</u>

Pending before this Court is the Motion of Stefania Joanne Ramos Birch Esq. to Quash Third-Party Subpoena and for a Protective Order. (Dkt. No .____). After reviewing the Motion, the record, and the applicable law, the Court is of the opinion that:

_____ The Motion for a Protective Order to delay discovery pending the Motion to Quash should be granted;

_____ The Motion to Quash the Third-Party Subpoena should be granted;

_____ The Motion for a Protective Order limiting discovery to the issue of Mrs. Ramos's personal contacts with Ohio/Plaintiff Angelyne Lisinski and excluding from discovery the phrase "arreglar sin salir" should be granted;

_____ The Motion for a Protective Order limiting discovery to a deposition only to determine the extent of her knowledge regarding the defamatory campaign alleged in the Complaint and to her knowledge of the defamers' identities should be granted; and/or

_____ The Motion to delay discovery for 90 days should be granted.

It is SO ORDERED.

Signed this _____ of _____, 2022.

_____

_____
UNITED STATES DISTRICT JUDGE

# EXHIBIT H

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of September 2022, a true and correct copy of the Motion of Stefania Joanne Ramos Birch Esq. to Quash Third-Party Subpoena and for a Protective Order and all attachments thereto was provided via USPS priority mail to:

1. Alexandra Lozano, 6720 Fort Dent Way, Suite 230, Tukwila, WA 98188;
2. Angelyne Lisinski, 10104 Brewster Lane Suite 100 Powell, Ohio 43065;
3. Giulia Fantacci, 420 Lincoln Road, Ste. 357, Miami Beach, Fl 33139; and
4. Counsel of record in the underlying action for the Plaintiffs in the Southern District of Ohio at the following address:

    Organ Law LLP
    1330 Dublin Road
    Columbus, OH 43215

In addition, I provided a courtesy copy via e-mail on the same date to the e-mail address for counsel of record listed in PACER.

_s// Stefania J. Ramos Birch Esq._
Stefania J. Ramos Birch Esq.
_pro se_
WDW I.D. 6545469
Washington Bar No. 52468
California Bar No. 294827
Ramos Immigration PLLC
P.O. Box 2102
Bothell, WA 98041
(425)218-7458
ramosimmigration@gmail.com
